LESH ET AL. *v.* THE TRUSTEES OF PURDUE UNIVERSITY.

[No. 18,465.   Filed December 18, 1953. Rehearing denied February 5, 1954. Transfer denied April 14, 1954.]

*U. S. Lesh* and *Joseph H. Lesh,* of Huntington, *Charles B. Kemmer,* of Lafayette, and *A. J. Klee,* of Indianapolis, for appellant.

*George T. Schilling* and *Michael T. Ricks,* of Lafayette, and *Stuart, Devol, Branigin & Ricks* (of Counsel), of Lafayette, for appellees.

CRUMPACKER, C. J.—We are indebted to the appellee for a concise and what appears to be an accurate statement of the nature of this action and therefore we quote as follows:

"On November 3, 1945, appellants' decedent, A. E. Kemmer, entered into a written construction contract with appellee, under which he was to furnish all labor and materials necessary for the construction of Student Apartment Dormitories for a fixed price of $1,118,640. During the contract period the parties agreed on four change orders which increased the original contract price by $93,051.06. The work was performed pursuant to the contract and change orders and was accepted by appellee. The original contract price and the added amount due by reason of the change orders were paid in full.

"Because the contract involved public work, a committee was designated to determine and did determine the prevailing scale of wages being paid in the locality for the classes of work involved pursuant to Chapter 319 of the Acts of the General Assembly of Indiana, 1935, which Act prohibits the payment of a scale of wages less than the prevailing scale, as determined by such committee.

"Mr. Kemmer claimed that because of labor demands made during the course of the work, he was required to pay a higher scale of wages than the scale determined by the committee to be the prevailing scale of wages and he was also required to pay overtime rates. He claimed that he threatened to suspend the work unless reimbursed for the amount of increased wages and overtime, that thereupon appellee promised such reimbursement

to avoid suspension of the work, that he relied on such promise and that the appellee refused to pay such amounts."

The complaint is in two paragraphs, the first of which seeks to recover $60,555.30, which is the amount by which the wages paid by appellants' decedent, in reliance on the appellee's promise of reimbursement, exceeded the wage rate established by the committee and carried forward into the contract documents. The second paragraph is concerned with $54,276.88 in overtime wages he was compelled to pay his employees to meet competition in the labor market and in which amount the appellee is alleged to have promised to reimburse him in order to prevent a suspension of work. The appellee answered agreeable to Rule 1-3 and a trial to the court was had upon the issues thus joined. The court found the facts specially, stated conclusions of law thereon favorable to the appellee, and the judgment is that the plaintiff take nothing by reason of his complaint. In the meantime Kemmer died and his personal representatives prosecuted this appeal. Our use of the word "appellant" however will be understood to refer to Kemmer.

From an examination of the record it seems clear to us that upon the trial of this case the appellant predicated his right to recover upon the existence of a supplemental promise, made by the appellee, and upon which he relied, whereby the appellee, in order to prevent a work stoppage, undertook to reimburse him for all labor costs in excess of the rate stipulated in the contract of November 3, 1945. The evidence on the subject is in irreconcilable conflict, and in resolving the controversy the court specifically found that no such promise was made. On this theory of the case all other facts found by the court are relatively unimportant,

and even if incomplete and confusing, as the appellant contends, it is of little consequence. The finding that the supplemental contract upon which the appellant relies was never made is fatal to his case and amply supports the court's conclusion "that the law is with the defendant."

The burden of the appellant's brief, however, is to the effect that the appellee's refusal to reimburse him for the excess wages and overtime he was compelled to pay his employees in order to avoid a suspension of work, constitutes a breach of the contract of November 3, 1945, and he is entitled to recover damages therefor even thought there was no supplemental agreement on the subject. This contention is based on the appellant's construction of the following language found in the architect's specifications, which is one of the documents constituting the contract of November 3, 1945.

"We, the undersigned committee, were appointed to prepare and fix a schedule of the prevailing wage rates to be paid in connection with the above named project, in accordance with Chapter 319 of the General Assembly of Indiana, 1933. (1935)

"The wage rate set forth by the committee shall in no way be construed to prevent the contractor or sub-contractor from paying higher rates of wages to be determined by the approval of wage adjustment board *on wage increases that may be pending at the present time.* If any classifications are omitted in this schedule, the prevailing rate shall be paid."

The appellant says that since this provision of the contract refers specifically to labor classifications in which proceedings for increased wages were then pending before the wage adjustment board, the implication is that the wages specified by the committee as to all other classifications could not be increased and therefore become the wage ceiling as

well as the wage floor. Assuming without deciding that the contract should be so construed we cannot agree that thereby the appellee becomes obligated, by implication, to reimburse the appellant for all labor costs over and above the prevailing rate fixed by the committee unless by its conduct or by some act the appellee was responsible for the additional labor costs to which the appellant was put in the performance of the contract. It is an implied condition of every contract that neither party will hinder the other in his discharge of the obligations imposed upon him nor increase his cost of performance. *Sunswick Corporation* v. *United States* (1948), 75 F. Supp. 221; *York Engineering & Construction Co.* v. *United States* (1945), 62 F. Supp. 546. In the present case, however, there is no finding to the effect that the appellee in any way increased the burden of performance imposed upon the appellant by the contract involved. The appellant had the burden of proof on such issue and the failure of the court to find facts essential to a recovery on that theory compels us to regard such facts as not proven. *Kerfoot* v. *Kessener* (1949), 227 Ind. 58, 84 N. E. 2d 190. This we think disposes of the questions presented by the motion for a new trial.

Independently assigned as error is the court's overruling of appellant's motion for a *venire de novo*. This motion is based on the contention that the special findings of facts is so incomplete and improper in form and so replete with evidentiary matters that no conclusions of law either way could rightfully be drawn therefrom. If this be true, a *venire de novo* is the proper remedy. *Trustees, etc.* v. *Shoemaker's Estate* (1898), 20 Ind. App. 319, 50 N. E. 594; *Cottrell* v. *Nixon* (1887), 109 Ind. 378, 10 N. E. 122. There are nine special findings of fact. Our attention is specifically called to No. 6 which is to the effect that

the appellant at no time threatened to abandon the work. This is entirely outside the factual issues as the appellant does not contend that he made any such threats, but even had he done so the matter was important only as bearing on the question of a valid consideration for the appellee's alleged promise to pay additional labor costs. Whatever error there may be in the finding is rendered harmless by finding No. 8 to the effect that no promise to pay excess labor costs was ever made by the appellee. Complaint is also made of finding No. 9. This is largely a recital of evidence bearing on a subject concerning which the ultimate fact was not essential to a decision, and it may be disregarded without affecting the sufficiency of the remaining findings to support the conclusions of law.

The appellant is particularly critical of finding No. 2, which is as follows:

"On November 3, 1945, the plaintiff, Alva E. Kemmer, and the defendant, The Trustees of Purdue University, entered into a written contract for the construction by the plaintiff for the defendant of certain buildings known as Student Apartment Dormitories, which contract consists of the documents introduced in evidence in this case and designated as plaintiff's Exhibits 1 and 2, all of which are by reference made a part of this finding."

The appellant contends that instruments which are the foundation of the action, as is the contract of November 3, 1945, in this case, should be incorporated in the special findings and that can be done by reference only when such instruments are already a part of the record. As exhibits introduced in evidence are not a part of the record until made so by a bill of exceptions, the argument is that the finding is silent as to the contract sued upon and there is nothing to support the court's construction thereof as stated

in its conclusions of law. Where the court fails to find an ultimate fact essential to a decision the remedy is a motion for a new trial, not for a *venire de novo*. *Maxwell* v. *Wright* (1903), 160 Ind. 515, 67 N. E. 267; *Brehm* v. *Hennings* (1919), 70 Ind. App. 625, 123 N. E. 821. Appellant makes no point of this in that portion of his brief in which he urges error in overruling his motion for a new trial and we therefore treat the question as waived. *Williams* v. *Citizens, etc., Co.* (1899), 153 Ind. 496, 55 N. E. 425. In our opinion the special findings essential to a decision of the issues are sufficiently definite and certain to withstand attack by a motion for a *venire de novo*.

By its conclusions of law the court construed the contract in suit as obligating the appellee to furnish all the materials and perform all the work therein specified for the certain sum of money therein set out and cast upon him the risk of increased labor costs. The appellant challenges this construction of the contract and insists, for reasons heretofore discussed, that the wage scale set out in the contract was the maximum he could pay without obligating the appellee to make equitable adjustment for additional costs to which he was put in order to perform the construction work. This totally ignores the fixed price for the completed job as stated in the contract and, if so construed, makes the contract a cost-plus agreement. The appellant concedes that there is nothing in the contract that specifically dictates such a construction but says that it is there by implication. To this we are unable to agree. The contract, being for public works, required the contractor to pay his laborers not less than the prevailing wage scale in the vicinity as determined by a committee under the provisions of the Minimum Wage Act of 1935. Sec. 53-301, et seq. Burns' 1951 Replacement. The committee did its work and the appellant

based his bid for the completed job on the cost of labor at the prevailing scale so determined. The court failed to find that the appellee was in any way responsible for the subsequent increase in labor costs and in the absence of such a finding there is no basis for imposing a duty on appellee to make equitable adjustment thereof. We see no error in the conclusions of law.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 2d 117.