**MIDLAND ENGINEERING CO., et al., Plaintiffs,**

v.

**JOHN A. HALL CONSTRUCTION COMPANY, and United States Fidelity & Guaranty Co., Defendants.**

No. 73-S-259.

United States District Court,
N. D. Indiana,
South Bend Division.

July 16, 1975.

William J. Reinke, Brian J. Lake, Gregory J. Utkin, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, Ind., Herman L. Fussell, McNeill Stokes, Stokes, Boyd & Shapiro, Atlanta, Ga., Harry A. Wilson, Jr.,

Wilson & Tabor, Indianapolis, Ind., for plaintiffs.

John D. Bodine, Bodine, McLaughlin & Bodine, Mishawaka, Ind., James M. Tuschman, Shumaker, Loop & Kendrick, Toledo, Ohio, Harry L. Griffin, Jr., Atlanta, Ga., John H. Sweeney, Sweeney, Fox, Sweeney, Winski & Dabagia, Michigan City, Ind., for defendants.

## MEMORANDUM

GRANT, District Judge.

This contract action was originally filed on December 18, 1973, by plaintiffs Midland Engineering Company [hereinafter Midland], Miller Steel & Supply Company [hereinafter Miller], and the Art Mosaic & Tile Company of South Bend, Indiana [hereinafter Art]. These plaintiffs sought judgment from defendants John A. Hall Construction Company [hereinafter Hall] and United States Fidelity and Guaranty Company [hereinafter U.S.F. & G.]. During the course of these proceedings, the following entities have been joined as party plaintiffs to this action: O'Hara Decorating Service, Inc. [hereinafter O'Hara], John Murphy d/b/a Murphy Construction Company [hereinafter Murphy], Enterprise Group, Inc. [hereinafter Enterprise], and Asbestos Wood Manufacturing Company [hereinafter Asbestos].

Hall has filed counterclaims against each of the above-named plaintiffs except Asbestos. Hall failed to file either an answer or counterclaim against Asbestos during the twenty days permitted by Rule 12, F.R.C.P. Hall has submitted a proposed counterclaim against Asbestos and has requested leave of Court to file the same.

On February 24, 1975, plaintiff Michigan City Area Schools, School Building Corporation of Michigan City, Indiana [hereinafter Schools] filed a complaint for damages and injunctive relief against Hall. That action was consolidated upon motion of counsel for Schools with the action maintained by Midland, Miller, Art, O'Hara, Murphy, Enter-prise and Asbestos [hereinafter the Midland plaintiffs], upon order of this Court dated April 18, 1975.

This action arises from the construction of Rogers High School in Michigan City, Indiana. On February 11, 1970, Hall entered into an agreement with Schools whereby Hall was to become one of several co-prime contractors for the construction of the new high school. On the same date, Hall executed a labor and material bond with U. S. F. & G. wherein the surety agreed to pay claimants, including subcontractors, in the event Hall should fail to make payment for labor and materials furnished in the project. Hall later entered into subcontracts with various entities, including each of the Midland plaintiffs.

Under the contract between Schools and Hall [hereinafter general contract], Schools was to retain ten per cent of the payments to Hall until the job was fifty per cent finished, following which Schools would retain five per cent. Under each of the subcontracts, the retainage by Hall from the subcontractors was set at ten per cent throughout the job.

Following the apparent completion of the high school, the architects found some seventy-five alleged defects in the work, as a consequence of which Schools refused to pay the remaining sums due to Hall. At the inception of this action Schools was withholding $257,564 from Hall. Hall, in turn, is withholding approximately $504,000 from its subcontractors, relying upon provisions of each of the subcontracts which provide, in effect, that final payment is not due to a subcontractor until the general contractor receives payment from the owner. Hall also contends that it may refuse to pay all or part of the sums due to the subcontractors on the basis of asserted backcharges and costs of arbitration regarding the job.

Rogers High School has now been occupied for school purposes for more than three years. The Midland plaintiffs instituted this action to recover the

sums they claim to be due them under the subcontracts.

Midland entered into two subcontracts with Hall on March 5, 1970. Midland's work pertained to the furnishing and installation of acoustical ceilings and demountable partitions. Of the combined contract price of $371,844, Hall is withholding $37,184 in retainage from Midland. Midland has brought this suit to recover that sum; Hall has counterclaimed against Midland for $100,000.

Miller entered into a subcontract with Hall on November 4, 1969. Miller was to furnish and install Tectum Decks and Mansard Panels. Of the contract price of $118,000, Hall is withholding $12,351.-90 from Miller, for which Miller has brought this action. Hall has counterclaimed against Miller for $11,000.

Art entered into a subcontract with Hall on April 1, 1970, for the furnishing and installation of terrazo and ceramic tile. Of the contract price of $132,000, Hall is withholding $13,315.79. Hall has counterclaimed against Art for $11,000.

O'Hara entered into a subcontract with Hall on April 1, 1970. O'Hara was to furnish and install Desco glazetite wall coatings and neoprene flooring. The contract price was $30,100; Hall is withholding $5,584. Hall has counterclaimed against O'Hara for $11,000.

Murphy entered into a subcontract with Hall on March 4, 1970, under which Murphy was to furnish and install sanitary and storm sewers. Galvanized corrugated pipe, foundation drains and underpool drains were not a part of Murphy's subcontract. Of the contract price of $167,000, Hall is withholding $16,700 from Murphy. Hall has counterclaimed against this plaintiff for $11,000.

Enterprise entered into two subcontracts with Hall. Under the first Enterprise, doing business as I. P. Reiger Company, was to furnish and install coil wall partitions. The price of this contract was $51,612, of which Hall has withheld $5,161.20. Under the second subcontract Enterprise, doing business as Modernfold Doors of Chicago, Inc., was to furnish and install folding partitions for a contract price of $3,200, all of which has been withheld by Hall. Hall has counterclaimed against Enterprise for $22,000.

Asbestos entered into a subcontract with Hall on March 4, 1970. Asbestos was to furnish and install cement asbestos panels for a contract price of $134,600. Hall is withholding $13,474.-47 from Asbestos. Asbestos was made a party to this action with leave of Court on April 22, 1975, and Hall failed to file an answer or counterclaim within twenty days of that date. Hall has submitted a proposed counterclaim against Asbestos for $3,600.

Midland, Miller, and Art are all Indiana corporations with their principal places of business in Indiana. Murphy is an Indiana company with its principal place of business in Indiana. O'Hara, Enterprise, and Asbestos are all Illinois corporations with their principal places of business in Illinois. Hall is an Ohio corporation with its principal place of business in a state other than Indiana or Illinois. U.S.F. & G. is a Maryland corporation with its principal place of business in a state other than Indiana or Illinois. This Court thus has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (1970).

The Court shall first address the motion of Asbestos for entry of default judgment against the defendants, and will then turn to the Midland plaintiffs' motions for summary judgment. Prior to this, however, in order to indicate the problems faced by this Court in resolving the issues posed by these motions, it is necessary to embark upon a rather lengthy recitation of the activities of the parties during the course of this action.

Following the filing of the complaint in this action by the Midland plaintiffs on December 18, 1973, Hall and U.S.F.& G. filed an unsuccessful petition to com-

pel arbitration and to stay the proceedings on the basis of a clause in the general contract. On May 14, 1974, the defendants filed their answers, each of which consisted of five lines wherein the defendants denied each and every allegation in the complaint, including the contracts upon which the suit was brought. During the ten months following the filing of the complaint, the Midland plaintiffs moved the Court on three separate occasions for leave to amend their complaint for the purpose of adding party plaintiffs, and upon the granting of such leave filed such amendments. The plaintiffs also filed interrogatories and received answers thereto, and conducted two depositions. Defendants conducted no discovery, and counsel for the defendants was present at only one of the depositions.

On September 3, 1974, the Midland plaintiffs moved for summary judgment or in the alternative for partial summary judgment pursuant to Rule 56, F. R.C.P. In support of this motion the plaintiffs filed six affidavits and one additional exhibit and a supporting brief.

Hall responded to the plaintiffs' motion with an opposing motion which barely exceeded two pages in length. This motion referred to a single page of the deposition of Mr. John Hall, President of Hall, which was claimed to create a genuine issue of material fact. No afffidavit of any sort accompanied the Hall motion. Simultaneously, Hall filed a motion for leave to file counterclaims; these counterclaims were also cited in the motion in opposition to summary judgment. The Midland plaintiffs hotly contested the right of Hall to file the counterclaims. These were compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure, they claimed, and as such were required to be filed with or prior to Hall's answer; having failed to properly assert the claims, the plaintiffs argued, Hall had waived them. This Court agreed that these were compulsory counterclaims under the Rules and that Hall had

waived any right to file them, but we nonetheless permitted the filing. We noted that a refusal to exercise the discretion to allow the filing would leave Hall with no forum in which to assert the claims, *Wendell v. Holland-America Line*, 30 F.R.D. 162 (S.D.N.Y.1961), so justice required the Court to permit the filing under Rule 13. The counterclaims included allegations of many of the same facts which Hall had denied in its answer five months earlier. With no particular specificity, the counterclaims merely alleged failure of performance under the subcontracts by the Midland plaintiffs, and claimed damages therefor. Hall had made no affirmative denial in its answer of the allegations of each of the Midland plaintiffs that all conditions precedent to their recovery under the contracts had been performed. See Rule 9(c), F.R.C.P.

U.S.F. & G. made no response to the motion for summary judgment at this time.

Thus the case continued into May, 1975. During this time the plaintiffs were again active. They filed an unavailing motion for reconsideration of the Order permitting the filing of the counterclaims. They filed answers to the counterclaims. They filed a new motion for summary judgment of dismissal of the counterclaims or in the alternative for partial summary judgment of the counterclaims, in support of which they filed two additional affidavits, a complete copy of the earlier motion for summary judgment, and a new supporting brief. They filed a supplementary brief in support of their earlier motion for summary judgment. They moved the Court to add a new party plaintiff, Asbestos. They filed second interrogatories upon Hall and U. S.F. & G. On April 1, the plaintiffs moved for a temporary injunction against Hall and U.S.F. & G., with two more supporting affidavits. Following a hearing on this motion on May 2, 1975, that motion was denied. In light of the U.S.F. & G. bond, the Midland

plaintiffs could show no irreparable injury such as would entitle them to preliminary equitable relief.[1]

On May 9, 1975, eight months after the plaintiffs' first motion for summary judgment and four months after the second, the defendants filed a memorandum in opposition to the plaintiffs' motions. Two affidavits were filed in support of this memorandum: one of these affidavits was that of Hall's counsel; the other was that of Hall's Vice-President. Five days later, the Midland plaintiffs moved to strike the two affidavits on several grounds which will be discussed below. The Midland plaintiffs simultaneously filed a second supplemental brief in support of their motions for summary judgment.

Then on May 19, 1975, Asbestos, noting that neither Hall nor U.S.F. & G. had responded to the amended complaint which joined it as a party plaintiff, moved for entry of default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for judgment in the sum of $13,474.47 and costs. Two days later, Hall and U.S.F. & G. filed a motion in opposition to the entry of default, attributing the failure to answer to "oversight and inadvertence." Hall and U.S.F. & G. also filed proposed answers which read verbatim: ". . . for Answer to Complaint of Asbestos . . . alleges and says: 1. That it denies each and every allegation of said Complaint. WHEREFORE, . . ." Once again, the answer failed to affirmatively deny the allegation that all conditions precedent to recovery under the contract had been performed. Hall also filed a proposed amendment to its counterclaims which would add a "Count VII" against Asbestos. This amendment would allege that Asbestos is an Illinois corporation with its principal place of business in Illinois, a fact which the answer would deny; that Asbestos and Hall entered into a subcontract, a fact which the answer would deny; "That Asbestos has failed to perform its obligations under said contract"; and that Hall was damaged in the sum of $3,600.

One week later, Asbestos filed its brief in support of the motion for entry of default judgment. Asbestos noted that the only statement of explanation by Hall and U.S.F. & G. was that of "oversight and inadvertence," which was unsupported even by an affidavit; nor was the neglect shown to have been excusable. Moreover, Asbestos claimed that the defendants were acting in bad faith (pointing to the blanket denials in the answers), demonstrating a lack of diligence and a thinly veiled contempt of court, and were doing nothing more than attempting to delay recovery by the plaintiff which rightly belongs to it. Accordingly, Asbestos urged this Court not to allow this default to be opened, and to enter the judgment as requested.

The claims of Asbestos' brief are set forth rather extensively because of the Court's reluctance to disagree with them. As is plain from the foregoing recitation, defendants' performance in this cause has seemed less than conscientious. Despite the Court's reluctance, however, the default should be opened. The entry of default judgment under Rule 55(b) lies within the sound discretion of the Court. *Duling v. Markun*, 231 F.2d 833 (7th Cir.), *cert. denied* 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Gomes v. Williams*, 420 F.2d 1364 (10th Cir. 1970). Among the factors which may be considered in the exercise of that discretion are the sums of money potentially involved, *Hutton v. Fisher*, 359 F.2d 913 (3rd Cir. 1966); *Henry v. Metropolitan Life Ins. Co.*, 3 F.R.D. 142 (W.D.Va.1942); whether material issues of fact are involved,

[1]. It was also during this period that this Court ordered consolidation of Schools' case, CIV. NO. 75–43, with this action, CIV. NO. 73–259, and that Hall filed its motion to compel arbitration and to dismiss Schools' complaint. Schools was also a party to the hearing discussed above.

*United States ex rel. Mercer v. Kelley,* 50 F.R.D. 149 (E.D.Pa.1970); whether the default is largely technical, *Witt v. State of Arizona ex rel. Eyman,* 343 F. Supp. 392 (D.Ariz.1972); whether the plaintiff has been substantially prejudiced by the delay involved, *Davis v. Mercier-Freres,* 368 F.Supp. 498 (E.D. Wis.1973); and whether the default was due to excusable neglect. *Bavouset v. Shaw's of San Francisco,* 43 F.R.D. 296 (S.D.Tex.1967).

In the case at bar, Asbestos has demanded judgment in the sum of $13,-474.47 in its motion, and the defendant Hall has submitted a proposed counterclaim for $3,600. Thus the total sum in controversy in this portion of the action exceeds $17,000, a substantial sum of money. At least for the purposes of this motion, material issues of fact are posed by the unanswered complaint of Asbestos. Moreover, the default itself must be deemed largely technical in nature; viewing only the failure to answer the amended complaint, the defendants merely exceeded the time limits for the answer. Further, the defendants actively participated in this litigation during the period of default and promptly submitted the tardy answer upon the filing of the motion for default.

It cannot be said that Asbestos has been in any way prejudiced by the delay of the defendants, particularly in light of the nature of the answer ultimately submitted. Nor can the Court say with any certainty that the oversight and inadvertence alleged by the defendants were inexcusable under the circumstances of this case. The plaintiffs, in an understandable effort to expedite favorable rulings by this Court, have flooded the Court with pleadings and motions, to all of which the defendants have eventually responded, albeit less than completely. The plaintiffs have further conscientiously amended their complaint with leave of Court on four separate occasions to join parties plaintiff such as Asbestos. The foregoing is not mentioned to in any way cast aspersions upon the plaintiffs, who have been the beneficiaries of uniquely zealous representation. It is recited merely to distinguish the case at bar from those cases which involve a simple failure to answer a complaint without more.

■ Under modern practice, the default judgment is not a favored procedure. *Hutton v. Fisher,* 359 F.2d 913 (3rd Cir. 1966); *Hughes v. Holland,* 116 U.S.App.D.C. 59, 320 F.2d 781 (1963). This should be particularly true in an action such as this. This lawsuit would continue despite the entry of default judgment as prayed by Asbestos. Similar questions would be litigated, because the subcontract pleaded by Asbestos is substantially the same as those pleaded by the remaining plaintiffs, with the exception of Schools. The same counsel will appear for each side. There is little which would be gained in the area of judicial economy.

■ For the foregoing reasons the motion of Asbestos for default judgment against defendants Hall and U.S.F. & G. is denied. The answers of the defendants and the counterclaim of Hall against Asbestos are hereby deemed filed.

Before reaching the plaintiffs' motions for summary judgment, the Court must determine what evidence beyond the pleadings is properly before it. The Midland plaintiffs have moved to strike the only two affidavits filed by Hall and U.S.F. & G. in opposition to the motions. Accordingly, the Court shall next address itself to the admissibility of those affidavits.

The first affidavit to be considered is that of Mr. Don W. Unger. In his affidavit, which is quite short, Mr. Unger first tells the Court that he is Vice-President of Hall and is duly authorized to execute the affidavit on behalf of Hall, and that it is executed in support of the response of Hall to the Rule 56

motions.[2] The third and last paragraph of the affidavit reads in pertinent part:

> 3. The records of HALL show that there are back charges against the Plaintiffs arising out of their respective subcontracts with HALL on the Rogers High School job in Michigan City, Indiana for the following amounts:
>
> * * *
>
> Affiant further sayeth not.

The Midland plaintiffs assert five grounds for the striking of the affidavit: 1) the affidavit violates the "best evidence" rule; 2) the affidavit fails to affirmatively show Mr. Unger to be competent to testify as to the contents of said affidavit; 3) the affidavit fails to set forth facts admissible in evidence and is merely conclusionary; 4) the affidavit violates Local Rule 7 of this Court which requires affidavits to be filed within fifteen days of the plaintiffs' motion, whereas this affidavit was filed eight months subsequent to the motion; 5) the affidavit is grossly inconsistent with previous representations made by Mr. Unger in response to interrogatories and with previous representations made by the President of Hall.

■ Rule 56(e) states that when affidavits are employed to support or oppose a motion for summary judgment, such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." These requirements are mandatory. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). The affidavit may be considered only if the information contained therein would be admissible at trial. *McSpadden v. Mullins,* 456 F.2d 428 (8th Cir. 1972).

In general, the "best evidence," or "original documents" rule requires that if written evidence of a fact exists and the written document is not offered, parol evidence of the fact cannot be admitted into evidence unless the failure to produce the written document is properly explained or accounted for. *Probst v. Presbyterian Church,* 129 U.S. 182, 9 S.Ct. 263, 32 L.Ed. 642 (1889); *Supreme Tribe of Ben Hur v. Bastian,* 85 Ind.App. 327, 151 N.E. 346 (1926). Mr. Unger did not include in his affidavit any of the records or writings to which he refers. Absent the applicability of one of the exceptions to the "best evidence" rule, therefore, the material contained in his affidavit is inadmissible and must be stricken.

■ Mr. Unger has not alleged or shown that the records have been lost or destroyed, *United States v. Pendell,* 185 U.S. 189, 22 S.Ct. 624, 46 L.Ed. 866 (1902); *Bundy v. Cunningham,* 107 Ind. 360, 8 N.E. 174 (1886); or that the records are too voluminous for production, *Burton v. Driggs,* 87 U.S. 125, 20 Wall. 125, 22 L.Ed. 299 (1887); *Chicago, St. L. & P. R. Co. v. Wolcott,* 141 Ind. 267, 39 N.E. 451 (1895); or that he has personal knowledge of these facts as they exist independent of the writing. *Lewy v. United States,* 29 F.2d 462 (7th Cir. 1928), *cert. denied* 279 U.S. 850, 49 S.Ct. 346, 73 L.Ed. 993 (1929). Accordingly, the testimony in Mr. Unger's affidavit would be inadmissible and thus the affidavit violates Rule 56(e) and must be stricken. See also *Arkansas-Best Freight System, Inc. v. Youngblood,* 61 F.R.D. 565 (W.D.Ark.1974); *Welcher v. United States,* 14 F.R.D. 235 (E.D.Ark.1953).

The second affidavit under attack is that of Mr. James M. Tuschman, legal counsel for Hall. This lengthy affidavit consists of some twenty-five paragraphs covering eleven numbered pages. Sub-

---

2. Although Mr. Unger's affidavit appears on its face to limit itself to support of Hall, rather than both defendants, the Court will view it as having been submitted in support of U.S.F. & G. as well.

mitted with this affidavit are: an undated newspaper article found in the body of the affidavit on pages nine and ten, said to be "from the Michigan City newspaper"; four letters written by his client; a ten-page transcript of what appears to be attorneys' discussion during or in reference to arbitration proceedings between Hall and Schools; the Arbitrators' Award stemming from that arbitration; and a series of letters regarding that arbitration.[3]

At no point in the affidavit does Mr. Tuschman aver that the statements contained therein are made of his own personal knowledge. The Midland plaintiffs contend that the contents of the affidavit are consequently hearsay and inadmissible, and further that all paragraphs of the affidavit save one are immaterial to the motion and are therefore inadmissible.

Attorneys' affidavits are subject to the same rules as any other affidavits under Rule 56. The material contained therein must be based upon personal knowledge and relate to facts as to which the affiant attorney is competent to testify. *Stephens v. Brown & Root, Inc.*, 338 F.Supp. 680 (W.D.La. 1971), *aff'd per curiam* 455 F.2d 1383 (5th Cir. 1972). However, this Court is not wont to strike an affidavit in its entirety merely because of an absence of a formal statement averring personal knowledge.

Mr. Tuschman's affidavit contains several statements which are plainly based upon personal knowledge. The first paragraph, for example, states that the affiant is a member of a particular law firm in a particular city, and has been legal counsel for Hall at all times mentioned. The absence of a prefatory remark averring personal knowledge

will not lead this Court to conclude that this first paragraph is hearsay.

The same cannot be said of all of the statements in the affidavit, however. The bulk of the affidavit is composed of partly factual, partly conclusory "background information" regarding the involvement of Hall in the Rogers High School construction job and the disputes arising therefrom. The Court is unable to say from a reading of this background material that it is based upon the personal knowledge of the affiant. In the absence of a statement by the affiant that it is so based, the Court must rule such portions to be hearsay. Accordingly, all portions of the affidavit which cannot be said by this Court to have been clearly based upon personal knowledge are stricken. See *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2nd Cir. 1969); *Wimberly v. Clark Controller Co.*, 364 F.2d 225 (6th Cir. 1966).

The exhibits attached to the affidavit can in no sense be said to rise to the dignity of evidence. *Maddox v. Aetna Cas. & Sur. Co.*, 259 F.2d 51 (5th Cir. 1958); *Becker v. Koza*, 53 F.R.D. 416 (D.Neb.1971). None of the documents have been properly authenticated, with the possible exception of the transcript. On the face of the transcript it would not appear that the statements contained therein were made under oath; nor do they appear to be otherwise admissible, and further appear to the Court to be immaterial to the Midland plaintiffs' motion. None of the statements contained in the remaining documents were made under oath; nor do they appear to be otherwise admissible. Only a few of these remaining documents might even have been written by the affiant to whose affidavit they

---

3. Seven of these letters are unsigned communications from the affiant's law firm; nine are letters from one Patricia Staley who, while never identified, appears to be connected with the American Arbitration Association; three are signed letters from Mr. Harry Wilson of Indianapolis, counsel for Schools; one is an unsigned letter from Mr. Wilson; two are letters from an unidentified Mr. Harvey Greene; one is a letter to Mr. Tuschman written under the letterhead of the Frederick H. Burnham Company of Michigan City, Indiana, and signed by one "John O'Connor, Pres., M. C. School Bldg. Corp."

are appended, and those few are unsigned. None of the remaining documents can be considered as admissions of a party opponent insofar as the Midland plaintiffs' motion. The Court will therefore not consider the documents attached to the affidavit of Mr. Tuschman.

The Court now turns to the issues presented by the Midland plaintiffs' motions for summary judgment. Summary judgment is proper under Rule 56 only when the movant has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *McPhee v. Oliver Tyrone Co.*, 489 F.2d 718 (5th Cir. 1974); *Spiering v. Fairmont Foods Co.*, 424 F.2d 337 (7th Cir. 1970).

On the basis of the several affidavits submitted by the Midland plaintiffs in support of their motions for summary judgment, the depositions of Mr. John A. Hall, President of defendant Hall, and Mr. Edward Valleau, architect of Rogers High School, and those portions of the affidavit of Mr. Tuschman which appear on their face to have been made upon personal knowledge, the Court finds the following to be the material facts of this case:

Each of the Midland plaintiffs has satisfactorily completed its work. This finding is based upon a number of factors apparent in the record of this case. It should first be noted that each of these plaintiffs have alleged in their complaint that they have completed all conditions precedent to receipt of payment. Rule 9(c) of the Federal Rules of Civil Procedure requires that denial of a performance or occurrence of a condition precedent be pleaded specifically and with particularity. At no point in the two-and-a-half year history of this case have the defendants set forth such a denial; thus the allegations must be taken as admitted. Rule 8(d), F.R.C.P. Beyond this, however, the evidence is conclusive:

As regards Murphy, it is apparent that Murphy completed its work prior to the spring of 1972 [Valleau deposition at 20], that the architect made no complaints about Murphy's work [Valleau deposition at 20; letter from Harvey Greene to Murphy attached to Murphy's affidavit], and that the architect would approve payment to Murphy [Valleau deposition at 31]. It was also conceded by Mr. Hall that Murphy had completed its work [Hall deposition at 16].

Mr. Hall also conceded that both companies owned by Enterprise had completed their work satisfactorily [Hall deposition at 27]. The architect made no complaints about the work of Enterprise [Hall deposition at 27].

Mr. Hall similarly conceded that the architect had made no complaint of the work done by Miller [Hall deposition at 66], and the architect confirmed this [Valleau deposition at 23–24].

There appears to be some disagreement regarding the work of Art, which involved terrazo and ceramic tile. The President of Hall maintained that there remained two items of work to be done by Art, one of which he described as a "minor area" and not a "substantial problem" [Hall deposition at 24–25]. The architect, Mr. Valleau, stated unequivocally as follows:

Q  Regarding the installation of Terrazzo and ceramic tile, is it your determination that this work has been completed on the project to your satisfaction?

A  Yes, sir.

Q  There remains no work to be done?

A  That's correct, sir.

[Valleau deposition at 24]. The affidavit of Mr. Roman Lovisa, submitted by the plaintiffs in support of their motion, states that Art completed all work required by its subcontract. At the very least, then, Art has substantially performed its duties under the subcontract and, in the absence of any additional defenses on the part of Hall, is therefore entitled to payment. Any issue regarding the completeness of its work, as opposed to substantiality, is immaterial.

As regards O'Hara, Mr. Hall stated that there were "many, many items of uncompleted or unsatisfactory work" attributable to O'Hara on the "punch list" of defects prepared by the architect [Hall deposition at 17]. When presented with the punch list, however, Mr. Hall was able to find at most two items which even remotely affected O'Hara, and the deponent was uncertain whether even those items could be attributed to O'Hara [Hall deposition at 21–22]. Mr. Valleau explained that there was some need for Desco neoprene flooring corrections, this flooring being part of the O'Hara subcontract, but that the problem was the result of a concrete problem and not the installation of the neoprene flooring, and that O'Hara had completed its work satisfactorily [Valleau deposition at 25].

As regards Midland, there is no question but that Midland completed its work sufficiently to preclude the assessment against it of any back charges based upon workmanship [Hall deposition at 25]. There does appear to be a genuine issue of fact regarding possible delay caused by Midland. Mr. Hall's deposition makes several references to such delay, and delay is mentioned in the counterclaim against Midland. On the other hand, when Midland asked through interrogatories how Midland failed to complete its obligations under the contract, Hall made no mention of delay in its answer. Moreover, the affidavit of Mr. Steinmetz, submitted by Midland in support of the second motion for summary judgment, states that no delay damages resulted to Hall from the work of Midland. The issue of whether Midland delayed the work is not material to the motion for summary judgment, however, and thus need not be resolved by this Court. If Midland was delaying the work, Hall was required by the provisions of the subcontract to so notify Midland. That Hall gave no such notice is established by the uncontroverted affidavit of Mr. Steinmetz. Hall has thus forfeited any right it had under the sub-

contract to recover from Midland any losses occasioned by delay.

No evidence has been adduced by any party hereto regarding the performance or lack thereof by Asbestos. The pleadings, however, constitute a part of the record on which a court may base its determination of a motion for summary judgment. Rule 56(c), F.R.C.P. The pleadings in this action establish that Asbestos has satisfactorily performed its duties under the subcontract. Asbestos affirmatively pleaded that it had performed all conditions precedent to payment under the subcontract. The defendants failed to deny this allegation with particularity and specificity as required by Rule 9(c), F.R.C.P., and thus have admitted the allegation under Rule 8(d), F.R.C.P.

The Court further finds that Hall will not allow the subcontractors to return to the job site to complete or repair any work, because such permission would start anew the subcontractors' mechanics' lien rights [Hall deposition at 52–53].

It is also undisputed that Hall and Schools have taken at least a portion of their dispute to arbitration. That portion of the arbitration between Hall and Schools is now complete. The Court need not determine what sums Hall has since received from Schools. There is no indication that Hall has distributed any sums to the Midland plaintiffs since the inception of this action, at which time Hall was withholding $37,184 from these subcontractors.

■ In order to determine whether the Midland plaintiffs are entitled to judgment as a matter of law, the Court must first ascertain the positions taken by the parties. The specific problem facing the Court in the case at bar is to identify Hall's reasons for non-payment. The defendants' pleadings unfortunately have not been such as to crystallize these reasons for the benefit of the Court. Just as the Court will not grant summary judgment to an undeserving party on the

basis of confusing pleadings by the opposing party, neither shall the Court allow a lack of clarity on the part of the defendants to deny the plaintiffs summary judgment if they are otherwise entitled to it. With these principles in mind, the Court has carefully examined all of the filings in this cause in an attempt to glean therefrom the positions adopted by Hall and U.S.F. & G. The Court has relied most heavily upon three of these filings: (1) the answers of Hall to interrogatories propounded by the Midland plaintiffs, filed May 30, 1974; (2) the deposition of Mr. Hall, taken July 31, 1974; and (3) the defendants' brief in opposition to the motion for summary judgment.

On the basis of these documents, the Court concludes that Hall bases its refusal to pay the Midland plaintiffs on three principal reasons:

(A) Paragraph 15 of each of the subcontracts provides that the subcontractors shall be paid after the prime contractor, Hall, receives payment from the owner, Schools. Because Hall has not yet been paid by Schools, Hall contends that Paragraph 15 precludes the right of the Midland plaintiffs to receive payment.

(B) Hall withheld payment from the Midland plaintiffs pending determination of the arbitration with Schools, intending to assess each subcontractor a pro rata share of the costs of arbitration.

(C) Hall withheld payment from the Midland plaintiffs on the basis of asserted back charges against each of them. Hall intended to wait until the completion of the arbitration proceedings to determine which items of the punch list of defects Schools was willing to accept without further work, in order to arrive at a final determina-

tion of the back charges to be assessed against each subcontractor.[4]

■ *A. Paragraph 15.* This paragraph, found in each of the subcontracts, reads in pertinent part:

. . . the last payment, which the said contractor shall pay to said subcontractor immediately after said material and labor installed by said subcontractor to have been completed, approved by said architect, and final payment received by the contractor . . .

As outlined above in the findings of fact, the work of the Midland plaintiffs has been completed or substantially completed, and approved by the architect. Final payment has not been received by the contractor Hall. Hall claims that the above contract clause justifies it in withholding final payment from the Midland plaintiffs until it has received final payment from Schools, however long that may take. Hall is in error.

Clauses such as Paragraph 15 are not intended to provide the contractor with an eternal excuse for nonpayment. They have been construed by the courts on several occasions to simply provide the contractor with a reasonable time within which to obtain payment from the owner before he is contractually bound to the subcontractors for immediate payment. The interpretation for which Hall presses has been rejected many times. See, e. g., *Thomas J. Dyer v. Bishop Int'l Eng. Co.,* 303 F.2d 655 (6th Cir. 1962); *Byler v. Great Amer. Ins. Co.,* 395 F.2d 273 (10th Cir. 1968) (following *Dyer*).

Hall argues that the rule of the aforementioned cases is inapplicable here. In *Dyer,* Hall argues, the owner went into Chapter 10 reorganization under the Bankruptcy Act, and there was no issue of acceptance by the owner of the work. Hall's argument is unpersuasive. While

---

4. If the Court has misstated any legal position taken by Hall, or omitted any position Hall may have intended to take, the Court expresses its regret. The Court would note, however, that the above statement of Hall's position has been developed by the Court without aid from Hall in the form of express denials in the answer, affirmative defenses, or specific allegations of fact in the counterclaims. Hall has heretofore been given every opportunity to state its positions. It has not chosen to do so.

a primary purpose of the *Dyer* rule may be to prevent the subcontractors from relying solely upon the solvency of the owner for their payment, another equally significant purpose is to prevent money rightfully due to the subcontractors from becoming interminably tied up in a dispute between the contractor and the owner to which the subcontractors are not parties.

The facts of the case at bar inspire a hypothetical fact situation which underscores the wisdom of the *Dyer* rule. Under the terms of a general contract such as that between Schools and Hall, in which the owner retainage for the second half of the work is five per cent, and subcontracts such as we find here, in which the general contractor retains ten per cent from the subcontractors throughout the job, it is a virtual certainty that the prime contractor will find himself owing the subcontractors more than is owed to him by the owner. Under the rule for which Hall argues, it would not be inconceivable that a malefic general contractor might intentionally maintain a dispute with the owner which would cause the owner to refuse to make payment; the general contractor could thereby avail himself for several years of funds to which he has no right. The *Dyer* rule precludes such an intolerable state of affairs.

The Court finds that the *Dyer* rule is applicable to the case at bar. Paragraph 15 entitled the contractor Hall to take a reasonable time for payment of the subcontractors in the absence of payment from the owner. The Court further finds that a period of three years exceeds such a reasonable time. Absent validity of one or more of the remaining arguments of Hall and U.S. F. & G., therefore, the Midland plaintiffs are entitled to judgment as a matter of law.

■ *B. The costs of arbitration.* This argument explicity appears only in the deposition of Mr. Hall. Judging from the remarkable uniformity between the sums claimed by Hall in its counter-claims, however, the Court can only presume that such claims reflect pro rata shares of the costs of arbitration. At least insofar as it arises in this action, the Court considers this argument to be frivolous. Hall and U.S.F. & G. have pointed to no clause in the sub-contract which would justify such assessments against the Midland plaintiffs, nor have they cited to any cases which suggest the existence of any common law right to do so apart from the contracts. The argument is particularly frivolous here, because there is no indication that the arbitration was in any way necessitated by defects in the work of these plaintiffs; indeed, as indicated in the findings of fact, the evidence points precisely in the opposite direction. Accordingly, the Court holds that absent validity of the remaining argument of Hall and U.S.F. & G., the Midland plaintiffs are entitled to judgment as a matter of law.

*C. The back charges.* There is indiction in the deposition of Mr. Hall that the defendant Hall intends or intended to assess certain back charges against the Midland plaintiffs prior to payment under the subcontracts. It further appears that these back charges are claimed to have arisen from perceived deficiencies in the work of the Midland plaintiffs according to the punch list prepared by the architects.

As indicated in the findings of fact, the evidence belies the existence of such defects in the work of the Midland plaintiffs. Even if there were some unfinished or unsatisfactory work of these subcontractors at the job site, however, Mr. Hall stated in his deposition that in order to prevent a renaissance of mechanics' liens, Hall would not allow any of the original subcontractors to return to the job site to complete or repair their work. Moreover, there has been no indication that Hall has undertaken to complete any work of the Midland plaintiffs which Hall might contend was unsatisfactory and subject to back charges.

"[I]t is an implied condition of every contract that neither party will hinder the other in his discharge of the obligations imposed upon him . . . ." *Lesh v. Trustees of Purdue University*, 116 N.E.2d 117, 120 (Ind. 1953). Hall has breached this implied condition in order to prevent re-establishment of mechanics' lien rights. Hall has accordingly waived any right it may have had to withhold payments for corrective work. *United States for use of Gillioz v. John Kerns Constr. Co.*, 140 F.2d 792 (8th Cir. 1944); *Chicago Sugar Co. v. American Sugar Refining Co.*, 176 F.2d 1 (7th Cir.), *cert. denied* 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1949).

Consequently, Hall has no right to withhold payment to the Midland plaintiffs under a theory of eventual assessment of back charges. The Midland plaintiffs are entitled to judgment as a matter of law.

The Midland plaintiffs have filed two motions for summary judgment: one relates to their claims against Hall and U.S.F. & G.; the other relates to the counterclaims filed by Hall. In neither instance does there exist a genuine issue of material fact. In each instance the Midland plaintiffs are entitled to judgment as a matter of law. Accordingly, the Midland plaintiffs are in each instance entitled to summary judgment, and the motions of each of the Midland plaintiffs are granted.

The Court shall now address Hall's motion to compel arbitration of Schools's claim against Hall, and to dismiss Schools's complaint.

On February 24, 1975, Schools filed its complaint in this Court against Hall for damages and injunctive relief. Upon the motion of Schools, this Court ordered that Schools's claim be consolidated with the action of the Midland plaintiffs discussed above. · The complaint of Schools essentially alleges breach of the general contract by Hall. Schools demands judgment in the sum of $750,000 as "the result of defendant's breach of contract and his failure to perform in accordance with the Contract Documents." Schools also requests a permanent injunction restraining Hall from threatening civil action and arbitration, making unreasonable demands and refusing and failing to live up to unspecified supplemental agreements.

Hall has moved this Court to compel arbitration of the claim and to dismiss the complaint. The general contract, Hall says, requires arbitration of "all claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof . . . ." Schools opposes the motion on the grounds that Hall has waived its right to arbitration.

The gravaman of the problem posed to this Court is the pendency of an action filed in 1973 by Hall against Schools in the Superior Court of LaPorte County, Indiana. Hall claimed that a breach of contract by Schools resulted in delay damages to Hall and the punch list discussed above. Schools's reaction to this complaint was a motion to compel arbitration on the basis of the same clause invoked here by Hall. The state court made the following entry in response to that motion:

Petition to compel arbitration and to stay proceedings filed July 2, 1973, granted. Plaintiff ordered to proceed with arbitration the controversy set out in its complaint in this cause of action, and that said cause of action be stayed pending said arbitration.

It appears from the record before this Court that the parties did indeed go to arbitration, but only as regards the controversy over the punch list. It appears that the issue of delay, and responsibility therefor, was not then put before the arbitrators. The arbitration is now complete as regards the punch list, and Hall ·has apparently filed an application for further arbitration proceedings regarding the delays.

Both sides seem to find comfort in the history of the state court action. Schools claims that Hall waived any

right it may have had to compel arbitration when it filed its complaint in the LaPorte County court. Hall questions the right of Schools to come to this Court in violation of the order which Schools procured in the state court, and to attempt to do precisely what it convinced the state court that Hall could not do.

■ It is well settled that federal courts look with favor upon agreements to arbitrate disputes. See, e. g., *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *United Textile Workers v. Newberry Mills, Inc.,* 315 F.2d 217 (4th Cir. 1963); *Metro Ind. Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382 (2nd Cir.), *cert denied* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). One who wishes to show waiver by the opposing party bears the heavy burden of overcoming this favor. *Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir. 1968). Schools relies here upon a technical waiver by Hall by virtue of its prior institution of a civil suit. However, the Court notes several factors weighing upon the opposite side of the scale: Hall has faithfully pursued its remedies in arbitration since the order of the state court; Schools itself solicited the decision in the state court that the disputes were subject to arbitration under the contract; the state court action remains open to this date, and if Schools wishes to there assert counterclaims against Hall it may do so, because it has not yet filed a responsive pleading in that action. Ind.Tr.R. 13(A).

Schools does not seem to disagree with Hall that this complaint relates to the same delays which were and are the subject of the state court action. Schools does not even seem to argue that the claims it asserts here are not covered by the arbitration clause, or that the maintainance of successive arbitration suits by Hall amounts to an abuse of the arbitration procedure. Its sole position seems to be that Hall may not now claim a right to arbitration. Schools seems to be arguing that the plain, unambiguous clause in the general contract is only effective against the first party to reach the civil courthouse; having lost that race, Schools is no longer bound by the clause. Schools would seem to be suggesting that the state court's order only prevents Hall from taking civil action against Schools, and not the inverse. It is difficult for this Court to agree with this reasoning.

It would also appear that Hall would face something of a Hobson's choice if its motion to dismiss is denied. If it failed to assert as counterclaims the claims which are the basis of its state court complaint, it would waive those claims by virtue of Rule 13(a), F.R.C.P. *Wendell v. Holland-America Line,* 30 F.R.D. 162 (S.D.N.Y.1961). Conversely, if Hall were to assert its compulsory counterclaims against Schools, Hall would not only likely be subject to contempt proceedings in the state court, Hall would also have witnessed the effective removal to federal court of a patently non-removable state court action. 28 U.S.C. § 1441(b). This Court is reluctant to place Hall into such a position.

■ This Court finds that Schools has not overcome the strong favor with which federal courts view agreements to arbitrate. Accordingly, Hall's motion to compel arbitration and to dismiss the complaint is granted.