D. K. MEYER CORPORATION, A NEBRASKA CORPORATION, APPELLEE AND CROSS-APPELLANT, v. BEVCO, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE.

292 N. W. 2d 773

Filed May 28, 1980. No. 42731.

Larry R. Frank, for appellant.

James B. Cavanagh of Erickson, Sederstrom, Leigh, Johnson, Koukol & Fortune, P.C., for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This matter involves an appeal by Bevco, Inc., and a cross-appeal by D. K. Meyer Corporation from an order of the District Court for Douglas County, Nebraska, affirming a judgment rendered by the Omaha municipal court in favor of Meyer for money due it from Bevco on a construction project. We affirm as modified.

It appears from the record that the Church of the Holy Spirit in Plattsmouth, Nebraska, engaged an architectural firm to draft plans and specifications for the purpose of constructing the Holy Spirit Parish Center. Bids were subsequently let, with Bevco

being awarded the general contract. Bevco, in turn, let subcontracts for portions of the work to various parties under the contract. A roof support structure was to be fabricated by two different subcontractors and Meyer was awarded the subcontract for the complete erection of the roof support structure, consisting of the structural steel, steel space grid, open web joists, metal decking, and miscellaneous and ornamental metals. The total amount to be paid Meyer for its work under the contract was $10,550. The actual building was erected according to the plans and specifications. Likewise, the roof support structure was fabricated according to the specifications and plans. However, when Meyer attempted to place the roof support structure in place, it did not fit on the building as was required by the plans and specifications.

Measurements of the building were again taken and it was determined that the structure was dimensionally correct. In fact, the steel space grid support structure was of a standardized dimension, but did not fit into the building as planned by the architect. All parties to the construction project agreed that modifications were necessary for the completion of the project, which modifications were performed by Meyer, without objections by Bevco. While it is not clear from the record which party specifically authorized the modifications, it is, however, apparent from the evidence adduced at trial that the parties, including Meyer and Bevco, inferentially agreed to the modifications. Meyer incurred additional expenses in performing the modifications in a total amount of $3,891.40. This action arose from the refusal of Bevco to pay the additional costs incurred by Meyer as a result of the modifications performed by it.

On the basis of the foregoing evidence, the municipal court found for Meyer in the amount of $3,891.40 and costs in the amount of $44. The Dis-

trict Court affirmed this judgment and Bevco has appealed to this court, assigning two errors.

Bevco contends that error was committed by the lower court because the work was performed by Meyer without its first receiving a written change order pursuant to the contract entered into by Bevco and Meyer. Said contract was a "Standard Sub-Contract Agreement," which provided in relevant part: "[T]hat no extra work shall be allowed or changes made by the Sub-Contractor, or paid for by the Contractor unless and until authorized by the Contractor or his superintendent in writing before the work and/or changes are begun." It is undisputed that a written change order for the modifications performed was never given to Meyer. However, we conclude that the failure to obtain a written change order does not bar Meyer's recovery herein. In *Griffin v. Geneva Industries, Inc.,* 193 Neb. 694, 696-97, 228 N.W.2d 880, 882 (1975), we stated:

> It is well-established that the parties to a contract may avoid such a provision where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of the provision, or the party claiming the benefit of the provision is estopped to rely on it. Annotation, 2 A. L. R. 3d 620.
>
> The evidence is clear that the defendant knew about the additional work performed by the plaintiff and its conduct indicated approval and authorization for the work to proceed. Under these circumstances the defendant cannot now contend that the plaintiff is not entitled to compensation because he failed to obtain prior approval of a quotation for the additional work. Where the parties ignore such a provision in the contract it will not furnish a defense to a claim for compensation for the additional work

performed. McGowan v. City Malt Co., 89 Neb. 10, 130 N.W. 965.

See, also, Annot., 2 A.L.R.3d 620 (1965); and Annot., 66 A.L.R. 649 (1930).

The record sustains the conclusion that the parties herein ignored the provision of the contract requiring a written change order prior to the modification of the project. "The interpretation given a contract by the parties themselves while engaged in the performance of the contract is one of the best indications of the true intent of the parties and, ordinarily, that construction of the contract should be enforced." *Richards v. Bycroft,* 197 Neb. 478, 481, 249 N.W.2d 743, 745 (1977).

The job supervisor from Meyer testified that the work performed in the modifications was not originally contemplated in the contract. The project manager from Bevco testified that the modifications caused Meyer to incur costs not originally contemplated in the contract for erection of the steel space grid. Moreover, correspondence between Bevco and the architectural firm which designed the building indicates knowledge and acceptance of the extra costs incurred by Meyer and a request by Bevco to the architect that a change order be issued to Bevco for the costs of said modifications. In fact, in its request for a change order, Bevco demanded a 7 percent markup for itself on the costs of modification, but the request for the change order was denied. Whether or not the owner chose to modify its contract with Bevco in regard to any written change orders is immaterial on the question of whether Bevco's actions amounted to a modification of its own contract with Meyer. We believe that Bevco's actions clearly demonstrated a modification of the contract and recognized that Meyer was due money for the extra costs incurred as a result of the modifications. We, therefore, reject Bevco's assignment of error to the contrary.

Bevco also contends that error occurred because the contract further conditioned Meyer's payment on receipt of payment by Bevco from the owner. The contract provided, in relevant part: "That the Contractor shall not be liable for, nor bound in any respect to the Sub-Contractor for the payment to him of his monthly or final estimates of any moneys in excess of the amount which the Contractor receives from the Owner for the Sub-Contractor's work." The record is clear that Bevco has paid Meyer for all the work called for by the subcontract, but that Meyer has not been paid for the additional or extra labor and work incurred in the corrections and modifications referred to above. There is no dispute that the owner has not paid Bevco in full for all money due Bevco for work done on the project, but there is evidence in the record strongly indicating that the failure or refusal to pay Bevco in full was due to other matters in dispute between the owner and Bevco, in addition to the claim of Meyer for additional compensation for the extra work done in remedying the defects referred to. In *Midland Engineering Co. v. John A. Hall Const. Co.,* 398 F. Supp. 981 (N.D. Ind. 1975), the court was faced with a similar problem and had occasion to interpret a provision in a subcontract similar to that set out above. The provision contained in the subcontract involved in that case read as follows: "[T]he last payment, which the said contractor shall pay to said subcontractor immediately after said material and labor installed by said subcontractor to have been completed, approved by said architect, and final payment received by the contractor . . . ." *Id.* at 993. In interpreting the above provisions, that court stated:

Clauses such as Paragraph 15 are not intended to provide the contractor with an eternal excuse for nonpayment. They have been construed by the courts on several

occasions to simply provide the contractor with a reasonable time within which to obtain payment from the owner before he is contractually bound to the subcontractors for immediate payment. The interpretation for which Hall presses has been rejected many times. See, e. g., *Thomas J. Dyer v. Bishop Int'l Eng. Co.,* 303 F.2d 655 (6th Cir. 1962); *Byler v. Great Amer. Ins. Co.,* 395 F.2d 273 (10th Cir. 1968) (following *Dyer*).
. . . .
Under the rule for which Hall argues, it would not be inconceivable that a malefic general contractor might intentionally maintain a dispute with the owner which would cause the owner to refuse to make payment; the general contractor could thereby avail himself for several years of funds to which he has no right. The *Dyer* rule precludes such an intolerable state of affairs.

*Id.* at 993-94.

*Midland Engineering* was cited with approval by Judge Van Pelt, Senior District Judge, in *Culligan Corporation v. Transamerica Insurance Company,* 580 F.2d 251, 254, (7th Cir. 1978), as follows:

We find further support for our position in *Midland Engineering Co. v. John A. Hall Construction Co.,* 398 F.Supp. 981 (N. D. Ind. 1975). In that case the various subcontractors' work had been completed or substantially completed, and approved by the architect. Final payment had not been received by the general contractor, so he withheld final payment from the subcontractors on the basis that the subcontracts provided that final payment would not be made until the general contractor received payment. Despite the clear language of the subcontract, the court found that the lan-

guage merely provided the contractor with a reasonable time within which to obtain payment from the owner. The Indiana courts again indicated a concern with preventing money rightfully due to the subcontractors from becoming interminably tied up in a dispute between the contractor and the owner to which the subcontractors are not parties.

We do not believe that Meyer should be precluded from obtaining payment for the extra work it performed by virtue of the contract provision in its subcontract with Bevco. Nor do we believe that the provision in question was intended to delay the payment for extra work performed by a subcontractor and it should not be used in this case as an excuse for not paying Meyer. Meyer has long since been paid in full for the work specifically called for by his contract and, while there may still be disputes between Bevco and the owner which result in Bevco not having collected the money due it under its contract with the owner, that fact, under the authorities above set out, should not preclude Meyer, as subcontractor, from recovering from the contractor. We, therefore, conclude that Bevco's claim to the contrary is without merit.

Having found no merit in Bevco's errors on appeal, we now examine Meyer's cross-appeal. Meyer contends that the lower court committed error in failing to award it prejudgment interest. In the petition filed in the municipal court, Meyer asked for a judgment in the amount of $3,891.40 with prejudgment interest from June 6, 1977, the date upon which Meyer submitted its claim for the extra work to Bevco. The claim herein appears to be liquidated and one which normally would be a claim for which Meyer could recover prejudgment interest. In that regard, see *King v. Sky Harbor Air Service, Inc.*, 204 Neb. 4, 281 N.W.2d 209 (1979); *Wiebe Constr. Co. v.*

*School Dist. of Millard,* 198 Neb. 730, 255 N.W.2d 413 (1977); *Abbott v. Abbott,* 188 Neb. 61, 195 N.W.2d 204 (1972). In this case, the record is clear that there has never been a dispute between the parties that the extra work performed by Meyer was necessary and was performed by him; nor was there at any time any dispute as to the reasonable value of the services performed. The only dispute between the parties involved the question of who was liable to pay Meyer. Likewise, the only issues raised and contested in the District Court and brought to this court on appeal, were with reference to the interpretation of the two provisions of the subcontract as to the necessity of obtaining written approval for the performance of extra work and the one just discussed as to the necessity of payment by the owner before the contractor is required to pay the subcontractor.

The evidence and exhibits in this case clearly indicate that Meyer submitted an itemized list of the dates and nature of the work done in correcting the deficiencies involved, which list also contains an itemized breakdown of the amounts charged for the various items of work. It is clear from the record that Meyer sent this list to Bevco on or about June 6, 1977, but Bevco refused to pay the invoice. It also is clear, however, that Bevco did send the bill on to the owner for payment and, as previously stated, added a profit margin of 7 percent to the items in the bill for its own purposes.

While the District Court did not award the prejudgment interest to Meyer for which it prayed, there is nothing in the record that specifically indicates that it either approved or disapproved the granting of such interest. We believe that the amount claimed by Meyer for the extra work was a liquidated claim, at least as of June 6, 1977, and that the court should have allowed prejudgment interest to Meyer in its judgment. It is, therefore, necessary

that the judgment be modified to include such prejudgment interest.

In view of what we stated above, we conclude that the judgment of the District Court, affirming the judgment of the municipal court, must be affirmed, with the exception of the allowance of prejudgment interest; and we, therefore, remand this matter to the District Court with directions to amend its judgment to allow such interest.

AFFIRMED AS MODIFIED.