CULLIGAN CORPORATION, formerly doing business as Culligan Fyrprotexion, Inc., Plaintiff and Appellee,

v.

TRANSAMERICA INSURANCE COMPANY, Defendant and Appellant.

No. 77-1531.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1978.

Decided July 26, 1978.

Rehearing and Rehearing En Banc Denied Aug. 22, 1978.

Hugh E. Reynolds, Jr., Indianapolis, Ind., for defendant and appellant.

Richard D. Wagner, Indianapolis, Ind., for plaintiff and appellee.

Before SPRECHER and WOOD, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

This is an appeal by Transamerica Insurance Company from a summary judgment in the amount of $15,825.00, plus interest, rendered in favor of Culligan Corporation (formerly Culligan Fyrprotexion, Inc.). We affirm.

Culligan entered into a subcontract with Gerodetti Construction Company, Inc. on or about September 4, 1973 for the installation of automatic fire sprinkler equipment in two new shopping centers which were being constructed. These shopping centers were owned by Center Developers Ltd. Center awarded the general contract to Gerodetti and required Gerodetti to furnish a 100% performance and payment bond with an acceptable surety. Gerodetti obtained the Labor and Material Payment Bond from Transamerica on May 15, 1973, the date the contract between Gerodetti and Center was signed.

The subcontract provided for progress payments with the final retainage to be paid within 30 days after completion of the buildings and acceptance by the Owner.

---

* Robert Van Pelt, United States Senior District Judge for the District of Nebraska is sitting by designation.

The same subcontract, in preprinted form language, stated that the final payment was due

> when the Work described in this Subcontract is fully completed and performed in accordance with the Contract Documents and is satisfactory to the Architect.

Gerodetti's contract with Center also provided for progress payments. The final payment to Gerodetti was due 30 days after substantial completion of the work and receipt of final certificates of completion from three named parties including the architect.

Culligan completed its subcontract in November, 1974. Early in November, 1974, another construction company appeared on the construction sites and began tearing out some of Gerodetti's work. Center, by letter dated November 18, 1974, claimed that there were substantial defects in Gerodetti's workmanship and that the project plans and specifications had not been met. Subsequently, Gerodetti was locked out from the project. Center withheld final payment from Gerodetti, and Gerodetti withheld final payment from Culligan. Culligan's written demand for payment was refused by Gerodetti. On April 18, 1975, Culligan then brought this suit against both Gerodetti and Transamerica seeking the retainages. The defendants answered on May 7 and May 12, respectively. A Motion for Summary Judgment solely against Transamerica was filed on June 10, 1975. This motion was not finally disposed of until March 15, 1977. No discovery was had or evidence other than one affidavit was offered in support of the Motion for Summary Judgment. Two affidavits were offered in opposition.

Transamerica contends that the trial court erred in granting summary judgment because (1) there were genuine issues of material fact and (2) Transamerica was discharged as surety because Center breached its contract with Gerodetti.

Transamerica argues that there is a fact question as to whether the work performed by Culligan has been accepted by the architect and owner, as required in the subcontract, and by the parties who must approve Gerodetti's work in order for Gerodetti to obtain final payment from the owner. Since Culligan did not request or obtain summary judgment against Gerodetti, these questions are relevant only if the Labor and Material Payment Bond incorporates the acceptance requirements of the subcontract and general contract as conditions precedent to recovery. The district court found such acceptance was not a condition precedent to recovery, and even if acceptance was required, the facts showed implied acceptance. We believe the district court was correct in reaching this conclusion.

The bond itself sets forth the following conditions for recovery from the surety:

1) the claimant must have a direct contract with Gerodetti for labor, material, or both, used or reasonably required for use in the performance of the contract;

2) 90 days must have elapsed since the last labor or materials were supplied; and

3) the claimant must not have been paid in full.

All of these conditions are met by Culligan. There is no reference in the bond to the subcontract. The bond does make mention of the fact Gerodetti has entered into a contract to build two shopping centers

> which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

This statement occurs prior to the conditions enumerated for recovery. We believe it merely serves as a reference to identify the construction project covered by the bond [1] and does not thereby change or modify the terms of the bond. An indemnity

---

1. *See First Nat'l Ins. Co. of America v. Lynn,* 525 F.2d 1 (1st Cir. 1975), where it was held that a Payment Bond which indicated it was issued simultaneously with a Performance Bond in favor of the owner conditioned on full and faithful performance of the contract did not require full performance of the Performance Bond by the owner or contractor before the subcontractors could recover on the Payment Bond.

bond of a paid professional insurer will be construed broadly in favor of coverage. *Chrysler Corp. v. Hanover Insurance Co.,* 350 F.2d 652 (7th Cir. 1965), *cert. denied,* 383 U.S. 906, 86 S.Ct. 890, 15 L.Ed.2d 664 (1966).

We agree with the district court that the facts of this case show implied acceptance of Culligan's work. The November 18, 1974 letter from Center to Gerodetti listed 16 defects found by the architect, all of which related either to structural deficiencies in the buildings, or defective installation of the signs and windows. The letter does not mention any deficiencies in the sprinkler system installed by Culligan. The letter does indicate that notice has been given to Gerodetti of the numerous defects and deficiencies—yet Gerodetti itself has never alleged, either before or after this suit was instituted, that the work done by Culligan was not satisfactory. As a matter of fact, the affidavit of the contract manager of Culligan states that

> Gerodetti has expressed both orally and in writing its approval of and satisfaction with Culligan's work.

R. at 34. Further, the affidavit submitted by Culligan indicates that the buildings were completed by December 31, 1974 and that Center and its tenants thereby have had the benefits of fire protection and reduced insurance rates. We find nothing in the record to indicate that Culligan did not complete all of its work under the subcontract or that it was done in an unsatisfactory manner. Therefore, there is no genuine issue of fact as to completion and acceptance.

Transamerica's second argument on appeal is that where the owner has breached its contract with the principal, the surety is discharged. As an alternative, Transamerica argues that even if Culligan was a third-party beneficiary of the bond, Culligan must show that it relied on the bond in order to recover. These arguments simply have no merit.

Transamerica has at all times during this lawsuit tried to interject the dispute between Center, who discharged Gerodetti allegedly without notice and without allowing Gerodetti to verify the existence of allegedly defective work and correct it in accordance with the contract, and Gerodetti, whom Transamerica claims performed far below the contract standards and specifications. The Center-Gerodetti dispute would be relevant if Center was suing on the bond. However, Transamerica recognizes in its brief that:

> Admittedly decisions from Indiana and other jurisdictions may be cited in support of the proposition that a breach of contract by the owner-obligee in its contract with the principal will not discharge the surety of its obligation to laborers and materialmen.

In order to avoid this result, Transamerica distinguishes those cases by stating:

> However, a review of those cases discloses that the bonds involved were either required by statute or the property was public property against which a lien could not be filed by the materialman or laborer.

Frankly, we see no reason why a different result should be reached where non-public property is involved or the bond was not required by statute. We have reviewed statutory bond cases, cited by the parties, such as *Aetna Indemnity Co. v. Indianapolis Mortar & Fuel Co.,* 178 Ind. 70, 98 N.E. 706 (1912); *Conn v. State ex rel. Stutsman,* 125 Ind. 514, 25 N.E. 443 (1890); *Dewey v. State,* 91 Ind. 173 (1883); *State ex rel. Interstate Public Service Co. v. Lund,* 80 Ind.App. 349, 139 N.E. 466 (1923) and *United States Fidelity & Guaranty Co. v. American Blower Co.,* 41 Ind.App. 620, 84 N.E. 555 (1908), where a bond was not statutorily required but public property was involved upon which there could be no right to a lien. In these cases the Indiana courts show a strong concern for protecting those supplying material and labor. The courts found the bonds were dual in nature—they were given for the purpose both of securing performance for the owner and of securing prompt payment for the materialmen. The owner and materialmen were found to have entirely separate causes of action. As stat-

ed in *Aetna, supra,* 178 Ind. at 77, 98 N.E. 709:

> When the materialman delivered the materials, and the same were used in the improvement, his right to recover on said bond vested, and was independent of any right of action in favor of the city.

The bond here is not a performance and payment bond, but is captioned solely as a "Labor and Material Payment Bond." The persons who are entitled to make claim on the bond are those supplying labor and material such as Culligan—not the owner. Culligan has met every necessary requirement of the bond for a recovery under it. If Culligan is not entitled to make claim under this bond, who is? We cannot believe that the Indiana courts would construe a labor and material bond more narrowly than they construe a statutory payment and performance bond, when it is clear that a major purpose in both cases is to protect the supplier. The very risk Transamerica contracted to accept is what it now seeks to avoid. Transamerica would prefer to see Culligan assert a lien against the property in question. But Culligan has every legal and contractual right to seek payment from Transamerica.

We find further support for our position in *Midland Engineering Co. v. John A. Hall Construction Co.,* 398 F.Supp. 981 (N. D. Ind. 1975). In that case the various subcontractors' work had been completed or substantially completed, and approved by the architect. Final payment had not been received by the general contractor, so he withheld final payment from the subcontractors on the basis that the subcontracts provided that final payment would not be made until the general contractor received payment. Despite the clear language of the subcontract, the court found that the language merely provided the contractor with a reasonable time within which to obtain payment from the owner. The Indiana courts again indicated a concern with preventing

> money rightfully due to the subcontractors from becoming interminably tied up in a dispute between the contractor and

the owner to which the subcontractors are not parties.

*Id.* at 994. Essentially, Transamerica's position is no different when it tries to escape liability under the bond because of a dispute between Center and Gerodetti.

The judgment of the district court is affirmed.