In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1345

BMD CONTRACTORS, INC.,

*Plaintiff-Appellant,*

*v.*

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-0121-TWP-DML—**Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 15, 2011—DECIDED MAY 11, 2012

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case requires us to decide an increasingly important question in complex multi-tiered construction contracts—if the property owner becomes insolvent or otherwise defaults in payment, preventing a contractor from paying a subcontractor, which contractor bears the risk of loss? There is an additional wrinkle here because the question arises in a suit on a payment bond.

BMD Contractors, Inc. ("BMD") was a subcontractor for Industrial Power Systems, Inc. ("Industrial Power"), which was itself a subcontractor for Walbridge Aldinger Company ("Walbridge"), the general contractor overseeing the construction of a manufacturing plant near Indianapolis, Indiana. Industrial Power executed a payment bond with Fidelity and Deposit Company of Maryland ("Fidelity"), making Fidelity a surety for Industrial Power's payment obligations to BMD. The construction project proceeded on schedule for about a year, but the manufacturer then declared bankruptcy, causing a series of payment defaults to flow down the levels of contractors and subcontractors. Walbridge failed to pay Industrial Power, Industrial Power failed to pay BMD, and Fidelity refused to pay BMD. BMD sued Fidelity on the bond.

The subcontract between Industrial Power and BMD contains language conditioning Industrial Power's duty to pay on its own receipt of payment. The district court construed this language as a "pay if paid" clause, which requires Industrial Power to pay BMD *only if* it receives payment under its own contract with Walbridge. The court rejected BMD's counterargument that the contract language in question is a "pay *when* paid" clause, which would have controlled only the timing of Industrial Power's payment obligation, not its ultimate duty to pay. The court also rejected BMD's argument that pay-if-paid clauses are void under Indiana public policy. Finally, the court held that Fidelity, as a surety, could assert all the defenses of its principal, Industrial Power, even though the bond itself did not

specifically incorporate the pay-if-paid language. Based on these holdings, the court granted summary judgment in favor of Fidelity, and BMD appealed.

We affirm. The Industrial Power/BMD subcontract expressly provides that Industrial Power's receipt of payment is a condition precedent to its obligation to pay BMD. This language is clear and properly construed as a pay-if-paid clause. While the subcontract might have gone further—for example, it might also have said that BMD assumed the risk of the property owner's insolvency—this additional language was not necessary to create an enforceable pay-if-paid provision. We also agree with the district court that pay-if-paid clauses are not void under Indiana public policy. Finally, under basic Indiana surety-law principles—reinforced by the weight of authority from other jurisdictions—Fidelity may assert all the defenses of its principal. Because Industrial Power was never obligated to pay BMD in the first place, BMD may not recover against Fidelity on the payment bond.

## I. Background

In early 2007 Getrag Corporate Group created Getrag Transmission Manufacturing, LLC ("Getrag"), for the purpose of manufacturing automobile transmissions for Chrysler at a plant to be built in Tipton, Indiana. Getrag hired Walbridge as the general contractor for the construction of the facility, and Walbridge entered into multiple subcontracts, including one with Industrial

Power for mechanical piping work.[1] Industrial Power entered into a second-level subcontract, hiring BMD to perform the piping work required under the Walbridge/ Industrial Power subcontract. BMD, in turn, ordered supplies from Ferguson Enterprises, Inc.

Pursuant to the Walbridge/Industrial Power contract, Industrial Power executed a payment bond with Fidelity. The bond named Industrial Power as principal, Fidelity as surety, and BMD as a claimant. In essence, Fidelity promised to pay what Industrial Power owed to BMD under the Industrial Power/BMD subcontract if Industrial Power did not itself pay what was owed.

BMD began work on the project in November 2007. Over the next year, Walbridge paid Industrial Power from the payments it received from Getrag, and Industrial Power paid BMD from the payments it received from Walbridge, in accordance with their respective contracts. In October 2008 Getrag filed for bankruptcy. All work on the project ceased, and a cascade of missed payments flowed down the hierarchy of subcontractors. When this appeal was filed, Getrag owed Walbridge $40 million, Walbridge owed Industrial Power $11 million, Industrial Power owed BMD $1.5 million, and BMD owed Ferguson $700,000.

BMD and Ferguson filed mechanic's liens against the Getrag property, and BMD assigned Ferguson a portion

---

[1] Walbridge actually entered into several subcontracts with Industrial Power, but only one is relevant to this case and will be referred to simply as the Walbridge/Industrial Power contract.

of its rights under the payment bond.[2] BMD and Ferguson sought to recover the rest of what they were owed from Industrial Power, but Industrial Power refused to pay. BMD and Ferguson turned to Fidelity and demanded payment under the bond, but Fidelity refused as well. BMD and Ferguson then sued Fidelity on the bond.[3] The dispute centers on the interpretation and effect of key provisions in the following contracts: (1) the Industrial Power/BMD contract; (2) the Walbridge/Industrial Power contract; and (3) the Fidelity payment bond.

Taking the last of these contracts first, the terms of the payment bond obligate Fidelity to pay "claimants" of Industrial Power under the Walbridge/Industrial Power contract in the event that Industrial Power itself did not pay what was owed. Specifically, the bond provides:

> [I]f the Principal shall promptly make payments to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject to the following conditions.

---

[2] Prior to filing this appeal, BMD recovered almost half of what it was owed after the Getrag plant was sold in bankruptcy. The parties dispute whether we may take judicial notice of these proceedings, but that question ultimately has no bearing on our disposition of the case.

[3] Unless the context requires otherwise, we refer to BMD and Ferguson collectively as "BMD."

The bond then defines "claimant" as "one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract." The bond describes a claimant's right to sue as follows:

> [E]very claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment *for such sum or sums as may be justly due claimant,* and have execution thereon.

(Emphasis added.)

The Industrial Power/BMD subcontract contains the clause at the heart of this dispute. It states: "**IT IS EXPRESSLY AGREED THAT OWNER'S ACCEPTANCE OF SUBCONTRACTOR'S WORK AND PAYMENT TO THE CONTRACTOR FOR THE SUB-CONTRACTOR'S WORK ARE CONDITIONS PRECEDENT TO THE SUBCONTRACTOR'S RIGHT TO PAYMENTS BY THE CONTRACTOR.**" Other parts of the subcontract use similar language. For example, Article 2(g) provides that "it is a condition precedent to Contractor's obligation to make final payment to Subcontractor that Owner shall have tendered full payment for Subcontractor's Work to Contractor and that [C]ontractor shall have accepted such full payment from Owner."

The Walbridge/Industrial Power contract contains a similar provision stating that Industrial Power will

be paid only if Walbridge itself is paid. More specifically, Article XXII states as follows:

> [Industrial Power] acknowledges that it has considered [Getrag's] solvency and [Getrag's] ability to perform the terms of its contract with [Walbridge] before entering into this Subcontract. [Industrial Power] acknowledges that it relies on the credit and ability to pay of [Getrag], and not [Walbridge], for payment for work performed hereunder. [Industrial Power] is entering into this Subcontract with the full understanding that [Industrial Power] is accepting the risk that [Getrag] may be unable to perform the terms of its contract with [Walbridge]. [Industrial Power] agrees that as a condition precedent to [Walbridge's] obligation to make any payment to [Industrial Power], [Walbridge] must receive payment from [Getrag].

Based on these contract provisions, BMD and Fidelity each filed motions for summary judgment. Fidelity argued that the language we have quoted in the Industrial Power/BMD contract was properly construed as a pay-if-paid clause, which conditioned Industrial Power's duty to pay BMD on its own receipt of payment from Walbridge. Because Industrial Power had not been paid, it could not itself be liable to BMD, and as Industrial Power's surety, Fidelity could not be liable either.

BMD argued that the conditional language in the contract was not a pay-if-paid clause but, rather, a pay-*when*-paid clause, which governed only the *timing* of Industrial Power's payment to BMD, not its ultimate obligation

to pay. Industrial Power remained liable on the contract, BMD argued, so Fidelity was liable on the payment bond. In the alternative BMD maintained that if the conditional language *was* a pay-if-paid clause, it was contrary to Indiana public policy and therefore void. Finally, BMD argued that because the payment bond neither incorporated the Industrial Power/BMD contract nor contained a separate pay-if-paid clause, Fidelity was independently liable under the bond, even if Industrial Power itself was not liable under the subcontract.

The district court entered summary judgment for Fidelity. The court held that even though the Industrial Power/BMD contract did not contain express language stating that BMD assumed the risk of Getrag's insolvency, the "condition precedent" language was clear and properly construed as a pay-if-paid provision. The court also rejected BMD's public-policy argument because no Indiana statute directly addresses pay-if-paid clauses and Indiana courts apply a strong presumption in favor of the freedom of contract. Finally, the court held that a surety bond makes the surety liable only to the extent that the principal itself has an obligation to pay, so the Fidelity bond need not have explicitly incorporated the terms of the Industrial Power/BMD contract. The court acknowledged that this court's decision in *Culligan Corp. v. Transamerica Insurance Co.*, 580 F.2d 251 (7th Cir. 1978), seems to point in the other direction. But the court held that *Culligan* was distinguishable based on the "sums justly due" language in the Fidelity bond. More generally, the court noted that *Culligan* was dated—the

case was decided more than 30 years ago when pay-if-paid clauses were still new—and also noted that it did not cite Indiana caselaw explaining well-settled surety principles. This appeal followed.

## II. Discussion

We review de novo a district court's grant of summary judgment. *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009). There are no material factual disputes; Fidelity's liability turns on the interpretation of contractual language, raising only legal questions for which summary judgment is particularly appropriate. *See Slutsky-Peltz Plumbing & Heating Co., Inc. v. Vincennes Cmty. Sch. Corp.*, 556 N.E.2d 344, 345 (Ind. Ct. App. 1990). Sitting in diversity and applying Indiana law, we are required to make our best prediction of how the Indiana Supreme Court would decide the case. *Research Sys. Corp. v. IPSOS Publicité*, 276 F.3d 914, 925 (7th Cir. 2002). If the state supreme court has not spoken on a particular issue, then decisions of the intermediate appellate court will control "'unless there are persuasive indications that the state supreme court would decide the issue differently.'" *Id.* (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999)). Finally, if there are no directly applicable state decisions at all, then we may consult "'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data'" that might be persuasive on the question of how the Indiana Supreme Court would likely rule. *See Pisciotta v. Old Nat'l Bancorp.*, 499

F.3d 629, 635 (7th Cir. 2007) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)).

## A. Interpreting the Industrial Power/BMD Contract

As construction projects have become more complex, contractors and subcontractors have developed tools to manage the possibility that some "upstream" contracting party will become insolvent or otherwise default in payment, raising the question of which "downstream" parties bear the risk of nonpayment. Two increasingly common contractual provisions address distinct kinds of payment risk in construction subcontracting: pay-if-paid clauses and pay-when-paid clauses.

A pay-*when*-paid clause governs the timing of a contractor's payment obligation to the subcontractor, usually by indicating that the subcontractor will be paid within some fixed time period after the contractor itself is paid by the property owner. A typical clause of this type might say: "Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner." Robert F. Carney & Adam Cizek, *Payment Provisions in Construction Contracts and Construction Trust Fund Statutes*, 24 CONSTRUCTION LAW., Fall 2004, at 5, 5. These clauses address the timing of payment, not the obligation to pay. They do not excuse a contractor's ultimate liability if it does not receive payment by the property owner, so they do not transfer the risk of "upstream" insolvency from contractor to subcontractor and on down the chain.

In contrast, a pay-*if*-paid clause, as the name suggests, provides that a subcontractor will be paid *only if* the contractor is paid and thus ensures that each contracting party bears the risk of loss only for its own work. A typical clause of this type might say: "Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes the risk." *Id.* at 5-6.

BMD argues that the conditional language in its subcontract with Industrial Power was only a pay-when-paid clause and that Industrial Power remained liable even though it did not receive full payment from Walbridge. Fidelity argues that the provision is a pay-if-paid clause, and because Industrial Power did not receive payment, it had no duty to pay the balance due to BMD. To repeat, the relevant clause in the subcontract states: "It is expressly agreed that owner's acceptance of subcontractor's work and payment to the contractor for the subcontractor's work are *conditions precedent* to the subcontractor's right to payments by the contractor." (Emphasis added.)

This language is plain. Industrial Power's receipt of payment is a condition precedent to its obligation to pay BMD. True, the clause does not say in so many words that BMD assumes the risk of upstream nonpayment. The question here is whether express "transfer of risk" language is necessary to create a pay-if-paid clause or whether condition-precedent language is enough. We

conclude that the condition-precedent language is clear and sufficient on its face to unambiguously demonstrate the parties' intent that BMD would not be paid unless Industrial Power itself was paid. Additional transfer-of-risk language is not necessary.

The Indiana courts have not squarely addressed pay-if-paid clauses, but most jurisdictions that have done so have interpreted condition-precedent language as sufficient to create a pay-if-paid clause. *See, e.g.*, *Envirocorp Well Servs., Inc. v. Camp Dresser & McKee, Inc.*, No. IP99-1575-C-T/G, 2000 WL 1617840, at *5 (S.D. Ind. Oct. 25, 2000) (explaining that "[c]ourts that have enforced [pay-if-paid] provisions do so when the provisions explicitly provide that payment to the contractor by the owner is a condition precedent to payment to the subcontractor by the contractor"); *see also L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 939 P.2d 811, 814-15 (Ariz. Ct. App. 1997) (enforcing as a pay-if-paid clause a provision stating that contractor's receipt of payment from owner was a condition precedent to its obligation to pay subcontractor); *Gilbane Bldg. Co. v. Brisk Waterproofing Co.*, 585 A.2d 248, 249-51 (Md. Ct. Spec. App. 1991) (same); *Berkel & Co. Contractors v. Christman Co.*, 533 N.W.2d 838, 839 (Mich. Ct. App. 1995) (same).

BMD cites several cases suggesting that a pay-if-paid clause requires explicit language shifting the risk of nonpayment to the subcontractor. *See Thos. J. Dyer Co. v. Bishop Int'l Eng'g Co.*, 303 F.2d 655, 661 (6th Cir. 1962) ("[T]o transfer [risk of default] . . . from the general contractor to the subcontractor, the contract . . . should

contain an express condition clearly showing that to be the intention of the parties."); *Midland Eng'g Co. v. John A. Hall Constr. Co.*, 398 F. Supp. 981, 993-94 (N.D. Ind. 1975) (discussing *Dyer*); *Oberle & Assocs., Inc. v. Richmond Hotel, Ltd.*, No. 33C01-8706-CP-130, 1998 WL 35297806, at *5-7 (Ind. Cir. Ct. July 2, 1998) (quoting the language from *Dyer* excerpted above).

The Sixth Circuit's decision in *Dyer* is the leading case in this group—the others simply follow it—but BMD misreads that opinion by conflating two distinct concepts: (1) a requirement of express language demonstrating the parties' intent to transfer the risk of insolvency, and (2) a requirement that the parties use *particular language* to express that intent (for example, by stating that the subcontractor "assumes the risk" of the owner's insolvency, or something very similar). We do not disagree that to transfer the risk of upstream insolvency or default, the contracting parties must expressly demonstrate their intent to do so; that is the rule from *Dyer*. But by clearly stating that the contractor's receipt of payment from the owner is a condition precedent to the subcontractor's right to payment, the parties have expressly demonstrated *exactly* that intent. Adding specific assumption-of-risk language would reinforce that intent but is not strictly necessary to create an enforceable pay-if-paid clause. *Dyer* does not hold otherwise.

"Condition precedent" is a legal term of art with a clear meaning: "An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." BLACK'S LAW DICTIONARY 334

(9th ed. 2009). The Industrial Power/BMD contract unambiguously states that Industrial Power's receipt of payment is a condition precedent to BMD's right to payment. This provision means just what it says—that Industrial Power's duty to pay BMD is expressly conditioned on its own receipt of payment—thus evincing the parties' unambiguous intent that each party assumes its own risk of loss if Getrag becomes insolvent or otherwise defaults.

Notably, the subcontracts at issue in *Dyer*, *Midland*, and *Oberle* did not use condition-precedent language like that at issue here, so those cases cannot be read as suggesting that the use of this terminology is insufficient to create a pay-if-paid provision. Although it's possible to reinforce the clarity of a pay-if-paid clause by using redundant language—e.g., "in agreeing to this condition precedent, subcontractor assumes the risk of owner's insolvency"—additional language like this is not necessary if the meaning of the condition precedent is otherwise clear. *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1263 (10th Cir. 2006) (noting that a similarly worded subcontract's "failure to say all that it might have said is not enough to throw the intent of the contracting parties into doubt").

BMD identifies a single district-court decision in which condition-precedent language was held to create only a pay-*when*-paid clause. *See Sloan Co. v. Liberty Mut. Ins. Co.*, No. 07-5325, 2009 WL 2616715, at *6 (E.D. Pa. Aug. 25, 2009) ("[T]he mere presence of language such as 'condition precedent' . . . is insufficient to determine whether

a clause is a pay-if-paid or pay-when-paid provision."). *Sloan*, of course, is not controlling, and we do not find it persuasive. It stands in marked contrast to the weight of other authority. Even taken on its own terms, *Sloan* would not resolve this case. There, the district court asked "whether the clause reveals the parties' intent to shift the risk," *id.*, and held that the parties' use of condition-precedent language, while not *sufficient*, was strong *evidence* of that intent, *see id.* at *5 ("'A pay-if-paid condition generally requires words such as "condition," "if and only if," or "unless and until" that convey the parties' intention that a payment to a subcontractor is contingent on the contractor's receipt of those funds.'" (quoting *LBL Skysystems (USA), Inc. v. APG-Am., Inc.*, No. Civ. A. 02-5379, 2005 WL 2140240, at *32 (E.D. Pa. Aug. 31, 2005))).

Moreover, the contract provision in *Sloan*, unlike the one at issue here, had attributes of a pay-*when*-paid provision. It provided that "[f]inal payment [to the Subcontractor] shall be made within thirty (30) days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment: . . . (6) Contractor shall have received final payment from the Owner . . . ." *Sloan*, 2009 WL 2616715, at *4. Establishing a specific time frame in which payment must be made is the hallmark of pay-when-paid clauses. In contrast, the relevant contract clause in this case makes no mention of the timing of payment; instead, it identifies the owner's acceptance of BMD's work and Industrial Power's receipt of payment as conditions

precedent to Industrial Power's duty to pay BMD.[4] To the extent that *Sloan* can be read to *require* that contracting parties use specific words to create a pay-if-paid clause, we disagree, for the reasons we have explained.

Finally, BMD argues that the operative language in the subcontract is ambiguous and as such should be interpreted against Industrial Power, the drafter of the contract. *See MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004) (am-

---

[4] A separate provision of the Industrial Power/BMD subcontract—Article 2(g)— *does* mention a specific time frame for the final contract payment: "Contractor shall pay the balance of the Subcontract Amount to Subcontractor sixty (60) days after final completion of Subcontractor's Work . . . . However, it is a condition precedent to Contractor's obligation to make final payment to Subcontractor that Owner shall have tendered full payment for Subcontractor's Work . . . ."

Whether this provision standing alone would constitute a pay-if-paid clause is a closer question on which other courts have split. *Compare Sloan Co. v. Liberty Mut. Ins. Co.*, No. 07-5325, 2009 WL 2616715, at *8 (E.D. Pa. Aug. 25, 2009), *with Gilbane Bldg. Co. v. Brisk Waterproofing Co.*, 585 A.2d 248, 250-51 (Md. Ct. Spec. App. 1991). For the reasons we have already stated, "condition precedent" is a clear legal term of art that is ordinarily sufficient to create a pay-if-paid clause where a natural reading of the contract suggests as much. We need not address the separate question whether Article 2(g) is a pay-if-paid clause. Even *if* it is properly interpreted as a pay-when-paid clause, the condition-precedent language primarily at issue here does not contain any reference to the timing of payment and therefore cannot be read as a pay-when-paid clause.

biguity in a contract is construed against its drafter).
Contract language is ambiguous only if it is "susceptible
to more than one interpretation and reasonably intel-
ligent persons would honestly differ as to its meaning."
*Ind. Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d
1063, 1069-70 (Ind. Ct. App. 2001). As we have ex-
plained, the condition-precedent language in this
contract is not ambiguous. The provision contains none
of the standard features of a pay-when-paid clause and
therefore is not reasonably susceptible of more than
one meaning.

BMD argues in the alternative that the condition-prece-
dent provision is ambiguous by comparison to a similar
provision in the separate Walbridge/Industrial Power
subcontract, which adds specific language to the effect
that the subcontractor (there, Industrial Power) assumes
the risk of the owner's insolvency. BMD argues that
the presence of this additional assumption-of-risk
language in the Walbridge/Industrial Power stands in
"direct conflict" with the parallel provision in the Indus-
trial Power/BMD subcontract, which does not include
similar additional language. There is no conflict—at
least not one that carries any dispositive significance.
One contract is just more explicit than the other.

## B. Indiana Public Policy

BMD argues in the alternative that pay-if-paid clauses
are void under Indiana public policy. This argument
is easily rejected. As a preliminary matter, Indiana has
a strong background presumption favoring freedom of

contract. *See Zollman v. Geneva Leasing Assocs., Inc.*, 780 N.E.2d 387, 392 (Ind. Ct. App. 2002) ("[A]s a general rule, the law allows competent adults the utmost liberty in entering into contracts that, when entered into freely and voluntarily, will be enforced by the courts."). Indiana courts will not enforce contracts that violate state statutes, but they will not find a violation "'unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof.'" *Shelly & Sands*, 756 N.E.2d at 1073 (quoting *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 140 (Ind. 1996)).

BMD cites two Indiana statutes in support of its position, but neither is on point. The first is a statute voiding waivers of claims against payment bonds. Section 32-28-3-16(b) of the Indiana Code provides in relevant part:

> (b) A provision in a contract for the improvement of real estate in Indiana is void if the provision requires a person . . . who furnishes labor, materials, or machinery to waive a right to:
>
> . . .
>
>     (2) a claim against a payment bond;
>
> before the person is paid for the labor or materials furnished.

This statute invalidates any contract provision that *requires* a party to *waive* its claims under a payment bond; it does not cast doubt on the validity of pay-if-

paid clauses. Nothing in the Industrial/BMD subcontract required BMD to waive its right to recover under the payment bond. Rather, the subcontract allocated the risk of loss if Getrag defaulted on payment, ensuring that each party would bear the risk of loss only for its own work. Under the terms of the pay-if-paid clause, Industrial Power's obligation to pay BMD was conditioned on its own receipt of payment; the clause is not a waiver of BMD's right to make a claim under the Fidelity bond.

BMD insists that this distinction is illusory and that pay-if-paid clauses, in effect, *always* amount to waiver of payment, thus defeating the entire purpose of the payment bond. This argument mistakenly assumes that the purpose of a payment bond is to guarantee payment under *any* set of circumstances, rather than when payment is otherwise due under the specific terms of the subcontract. If the condition precedent here had occurred—if Industrial Power had been fully paid but refused to pay BMD—then BMD would have a valid claim against Fidelity under the payment bond. The bond's coverage is therefore not illusory; BMD's right to recovery is simply limited by the terms of its subcontract with Industrial Power.

BMD also relies on section 32-28-3-18(c) of the Indiana Code, which prohibits certain conditions on lien rights:

(c) An obligor's receipt of payment from a third person may not:

(1) be a condition precedent to;

. . .

the provider's right to record or foreclose a lien against the real estate that was improved by the provider's labor, material, or equipment.

By its terms this statute only prohibits contract conditions that operate on a contractor's lien rights. Nothing in the pay-if-paid clause limits BMD's right to file a lien against the subject property. To the contrary, both BMD and Ferguson filed mechanic's liens against the Getrag property. The liens were uncontested and yielded substantial payments when the property was sold. This statute does not affect the validity of pay-if-paid clauses.

## C. Surety Liability

Finally, BMD argues that because the payment bond does not expressly incorporate the terms of the Industrial Power/BMD subcontract, Fidelity can be liable to BMD under the bond even though Industrial Power is not liable under the subcontract. This argument contradicts basic principles of surety law. In Indiana, as elsewhere, a surety must answer only for the debts of the principal and cannot be liable where the principal is not.

Under Indiana law a surety contract obligates the surety "to answer for the debt, default, or miscarriage of another." *Meyer v. Bldg. & Realty Serv. Co.*, 196 N.E. 250, 253-54 (Ind. 1935). Surety contracts are not bilateral, but rather create a "tripartite relation between the party secured, the principal obligor, and the party secondarily liable, and the rights, remedies, and defenses of a surety

cannot be disassociated from this relationship." *Id.* at 253. Indiana courts therefore recognize that " '[g]enerally, a surety's liability is no greater than the principal's.' " *In re Kemper Ins. Cos.*, 819 N.E.2d 485, 491 (Ind. Ct. App. 2004) (quoting *Goeke v. Merch. Nat'l Bank & Trust Co. of Indianapolis*, 467 N.E.2d 760, 768 (Ind. Ct. App. 1984)). This is the general rule regarding the scope of surety liability. *See, e.g.*, 74 AM. JUR. 2D *Suretyship* § 88 (2001) ("As a general rule, a surety on a bond is not liable unless the principal is, and, therefore, he may plead any defense available to the principal."); 72 C.J.S. *Principal and Surety* § 79 (2005) ("[A] surety is not liable to an obligee unless its principal is also liable.").

BMD relies on the principle that surety contracts, like insurance contracts, are construed "strictly" against the surety, with any ambiguity resolved in favor of the covered party. *See, e.g.*, *Garco Indus. Equip. Co., Inc. v. Mallory*, 485 N.E.2d 652, 654 (Ind. Ct. App. 1985) ("[T]he contract of a surety for hire is viewed as analogous to an insurance contract, and is construed most strictly against the surety and in favor of the person to be protected."). This is perfectly true but perfectly irrelevant. This case raises a question about the scope of Industrial Power's liability to BMD and whether Fidelity's liability as a surety is coextensive with its principal's. The rule that ambiguities in a surety bond are strictly construed against the surety does not help answer the pertinent questions here.

On this point the Indiana Supreme Court's decision in *Meyer* is instructive:

> In construing an ambiguous provision in a corporate surety contract, the courts apply the rule applicable to insurance policies, namely, that the language will be construed most strongly against the insurance company. . . . But when the courts are dealing with the rights, remedies, and defenses of a surety, the rules of insurance furnish no help.

196 N.E. at 253. Fidelity is liable up to, but not *beyond*, the full liability of its principal, unless the surety contract clearly says otherwise. *See Kemper*, 819 N.E.2d at 493-95. BMD has not identified anything in the surety contract that says otherwise.

BMD emphasizes that the payment bond does not expressly incorporate the terms of the Industrial Power/BMD subcontract, but this is legally insignificant. As we have explained, surety contracts create *tripartite* relationships—the very existence of a surety implies an underlying obligation between the principal and its obligee. Accordingly, Indiana courts have recognized that where a contract and a surety bond are executed together, they must also be construed together. *See Weed Sewing Mach. Co. v. Winchell*, 7 N.E. 881, 883 (Ind. 1886); *Vanek v. Ind. Nat'l Bank*, 540 N.E.2d 81, 84 (Ind. Ct. App. 1989). This principle of joint construction is really just a restatement of the more general rule that a surety will not be liable where the principal is not.

BMD contends that the payment bond and the Industrial Power/BMD subcontract were *not* in fact executed concurrently. BMD is not entirely clear about the record support for this claim, but it seems to be

relying on the fact that the payment bond does not specifically incorporate the Industrial Power/BMD contract. As we have noted, this detail is irrelevant. The payment bond was executed in favor of the "claimants" of Industrial Power under the Walbridge/Industrial Power contract, and it defines "claimant" in a way that clearly includes BMD under its subcontract with Industrial Power. The bond thus makes Fidelity a surety with respect to Industrial Power's obligations to BMD under that subcontract. This is really just to say that the bond is, in fact, a surety contract. Perhaps BMD is arguing that the two contracts are not "concurrent" because one was signed two weeks after the other. "Concurrent" here does not mean "signed on the same day." It is enough that the bond clearly secures Industrial Power's contractual obligation to BMD; there is no ambiguity about that.

Indiana surety law is therefore quite clear on two general points: (1) sureties are generally liable only where the principal itself is liable; and (2) concurrently executed bonds and the contracts they secure are construed together. These surety-law principles firmly support Fidelity's position that it cannot be liable under the payment bond if Industrial Power is not liable under the subcontract. Although there are no Indiana cases applying these general principles in this particular context, courts in other jurisdictions have done so. *See Faith Techs., Inc. v. Fid. & Deposit Co. of Md.*, Civ. Action No. 10-2375-MLB, 2011 WL 251451 (D. Kan. Jan. 26, 2011); *Fixture Specialists, Inc. v. Global Constr., LLC*, Civ. Action No. 07-5614 (FLW), 2009 WL 904031 (D.N.J. Mar. 30, 2009); *Wellington Power Corp. v. CNA Sur. Corp.*, 614 S.E.2d

680 (W. Va. 2005).[5] Each of these cases is essentially identical to this case: The underlying subcontract contained a pay-if-paid provision that excused the principal from its payment obligation; the principal failed to pay because it did not receive payment; the subcontractor sued on a payment bond; and the surety asserted the pay-if-paid clause as a defense to liability even though the bond itself contained no such provision. In all three cases, the court held in favor of the surety, relying on the general principle that the surety could assert all the defenses of its principal.

Against this weight of authority, BMD cites *Culligan*, a decision of this court that has some superficial similarity to this case. On close reading, however, *Culligan* is distinguishable. There, as in this case, a subcontractor sued on a surety bond securing the prime contractor's payment on the subcontract. The property owner did not pay the prime contractor, the prime contractor in turn failed to pay the subcontractor, and the subcontractor looked to the surety for payment. Applying Indiana law, we held that the owner's nonpayment of the

---

[5] Fidelity finds additional support for this point in *Sloan*, 2009 WL 2616715—which is perhaps surprising given that *Sloan* is the one case that cuts *against* Fidelity on the threshold question of whether a pay-if-paid clause existed in the first place. Although *Sloan* eventually found that the relevant provision was only a pay-when-paid clause, the court first held that a surety *could* assert all the defenses of its principal— so if the clause there *had* been a pay-if-paid clause, the surety could have relied on it. *See id.* at *4.

prime contractor did not affect the surety's liability on the bond. 580 F.2d at 254. We held that the bond's identification of the subcontract was merely a reference, not an incorporation, and therefore did not change or modify the terms of the bond itself. *Id.*

BMD argues that *Culligan* supports the proposition that a surety bond and a subcontract may be construed independently and that a subcontractor may recover against a surety under the terms of the bond alone, regardless of whether the principal itself was liable. Stated as such, *Culligan* would seem to support BMD's position. But this argument elides a critical distinguishing fact— the subcontract in *Culligan* contained only a pay-*when*-paid clause, not a pay-*if*-paid clause,[6] so the contractor in that case was itself liable to the subcontractor. Not only had the owner breached its obligation to the contractor, but the contractor had *also* breached its obligation to the subcontractor. Because the pay-when-paid provision did not excuse the principal in the first place, the surety was liable to the same extent as the principal.

Admittedly, our decision in *Culligan* does not specifically state this principle in so many words; the

---

[6] *Culligan* did not use the terms "pay if paid" and "pay when paid" in its opinion because those phrases were not yet in common use. But the opinion specifically noted that the acceptance of the subcontractor's work was not a "condition precedent" to the subcontractor's right to recovery. *Culligan Corp. v. Transamerica Ins. Co.*, 580 F.2d 251, 252 (7th Cir. 1978).

opinion simply holds that the owner's breach did not discharge the surety of its obligations. But as we have noted, the subcontract in *Culligan* did not contain a pay-if-paid clause, so there was no reason for the court to address the hypothetical scenario in which a surety is sued but the principal is not itself liable for payment. It is telling that the primary case cited in *Culligan* is *Midland Engineering Co. v. John A. Hall Construction Co.*, 398 F. Supp. 981 (N.D. Ind. 1975), which likewise involved a subcontract containing only a pay-when-paid clause.

To whatever extent *Culligan* can be read to contain principles broader than its actual holding, we are authorized—indeed *required*—to conform our decision to predict how the *current* Indiana Supreme Court would rule. *See Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Indiana surety law has not changed since *Culligan* was decided, but it has been explained, and the principles relevant to this case have been affirmed and clarified. *See Kemper*, 819 N.E.2d at 491 (" 'Generally, a surety's liability is no greater than the principal's.' " (quoting *Goeke*, 467 N.E.2d at 768)).

More importantly, we are now confronted with a question that we did *not* consider in *Culligan*—whether the subcontractor has a claim against a payment bond *regardless* of whether the principal is liable for payment under the subcontract. Nothing in *Culligan* addresses this question, so there is no contradiction in now clarifying that the *Culligan* rule does not apply where a pay-if-paid clause excuses the principal entirely. Our holding, of course, simply affirms the prevailing general

rule that a surety is only liable where the principal itself is liable. The district court identified a somewhat different reason for distinguishing *Culligan.* The Fidelity bond provides that a claimant may sue to recover "such sums or sums as may be justly due claimant." The district court held that this language necessarily implies the existence of the separate contract between Industrial Power and BMD, so that the phrase "justly due" could only refer to sums justly due under that contract. *See Taylor Constr. Inc. v. ABT Serv. Corp.*, 163 F.3d 1119, 1122 (9th Cir. 1998) ("sums justly due" means due under the subcontract); *U.S. for Use & Benefit of Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976) (same). The surety bond in *Culligan* did not contain similar qualifying language.

This distinction is secondary to the more important distinguishing fact that the principal in *Culligan* was itself on the hook to the subcontractor, and Industrial Power, the principal here, is not. We also note that the cases the district court cited in support of its interpretation of the phrase "justly due" are not precisely on point.[7] Both *Taylor* and *Woodington* interpreted the phrase "sums justly due" as used in a federal *statute*, not

---

[7] BMD suggests that "justly due" refers to the *value* of the work performed by BMD. This reading is unnatural and would lead to absurd results. If "justly due" refers to the *value* of the work, then this provision in the bond makes the actual contract price meaningless. Even if a claimant was paid in full under the subcontract, it might still argue that the *value* of the work exceeded that price, and thus that further payment was "justly due."

in a payment bond. The question in those cases was not *whether* the sureties were liable, but rather how *much* they were obligated to pay. To answer this question, the courts naturally looked to the subcontract. That approach is persuasive here, but as an *additional* basis to distinguish *Culligan*. The pay-if-paid clause in the subcontract—not the "justly due" language in the payment bond—does most of the work here.

Finally, BMD relies on the Fourth Circuit's divided decision in *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 723-24 (4th Cir. 2000), which held that even where a pay-if-paid clause excuses the contractor's nonpayment, the subcontractor can still recover against the surety.[8] *Moore Bros.* cannot overcome the countervailing weight of authority. First, the decision is weak on the merits. The main point made by the *Moore Bros.* majority was that it would "defeat[] the very purpose of a payment bond" to let the surety assert the pay-if-paid clause as a defense against recovery. *Id.* at 723. This mistakenly assumes that the purpose of a payment bond is to insure subcontractors against nonpayment under *any* circumstances, rather than when payment is in fact due under the relevant contract. As Judge Wilkins noted in

---

[8] The *Moore Bros.* court referred to the relevant contractual provision as a pay-*when*-paid clause, but nevertheless clearly treated it as a pay-*if*-paid clause. *See Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 723 (4th Cir. 2000) (discussing how the relevant clause created a condition precedent and gave the principal a defense to liability).

partial dissent, "[t]he simple fact here is that some-one—either [the contractor], the Subcontractors, or [the surety]—had to bear the risk that [the owner] would not pay [the contractor]. Virginia law specifically allows subcontractors to bear that risk, and the Subcon-tractors here agreed to do so." *Id.* at 727, 729 (Wilkins, J., concurring in part and dissenting in part). The *Moore Bros.* majority relied chiefly on a line of reasoning that we have rejected.

Second, while the *Moore Bros.* majority cited three lower-court cases purporting to support its position, *see id.* at 723 (majority opinion) (citing *Brown & Kerr, Inc. v. St. Paul Fire & Marine Ins. Co.*, 940 F. Supp. 1245 (N.D. Ill. 1996); *Shearman & Assocs. v. Cont'l Cas. Co.*, 901 F. Supp. 199 (D.V.I. 1995); *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404 (Fla. 1990)), none were exactly on point. *Shearman* and *OBS Co.* held that a surety could not assert a pay-if-paid clause as a defense against a suit on the bond, but the outcome in both cases turned on the application of lien statutes specific to those jurisdictions. In essence, those courts held that "local lien law would be thwarted if the protection provided by the bonds was not equal to that which would have been provided under the liens." *Moore Bros.*, 207 F.3d at 729 n.4 (Wilkins, J., concurring in part and dissenting in part). And while the Florida Supreme Court in *OBS Co.* reached the same result without specifi-cally relying on local statutes, it also held that the sub-contract in question contained only a pay-when-paid clause and thus did not excuse the principal in the first place. *OBS Co.*, 558 So. 2d at 407.

*Moore Bros.* is therefore unpersuasive and contrary to basic Indiana surety-law principles. It is telling that *Faith Technologies*, *Fixture Specialists*, and *Wellington Power*—all of which applied general principles of surety law in the context of pay-if-paid subcontracts—were decided after *Moore Bros.*, and all three considered and rejected the *Moore Bros.* position. Because our responsibility in this case is to predict how the Indiana Supreme Court would rule on this issue, we do best to heed the weight and trajectory of decisions in other courts. *See Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40, 42 (7th Cir. 1992) (Courts of appeals must "'strive to parse state law and, if necessary, forecast its path of evolution.'" (quoting *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991))).

The clear trend of recent caselaw bolsters the basic principle of Indiana law that a surety may assert all the defenses of its principal. Fidelity, no less than Industrial Power, may rely on the pay-if-paid clause in the Industrial Power/BMD subcontract to defend against this suit on the payment bond. Summary judgment was properly entered in favor of Fidelity.

AFFIRMED.